Gerardo **JIMENEZ**, ex rel., Maribel **LITTLE**, a Child, Appellant,

v.

Reynaldo **GARZA** and Lila **Garza**, Appellees.

No. 08–89–00062–CV.

Court of Appeals of Texas, El Paso.

April 4, 1990.

**602**

Matt L. Thomas, Law Offices of Matt L. Thomas, Odessa, for appellant.

Allen R. Stroder, Odessa, for appellees.

Lilly A. Plummer, West Texas Legal Services, Odessa, Atty. Ad Litem.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

WOODARD, Justice.

This is an appeal from a judgment of termination of parental rights to a minor child. We reverse.

The child was born out of wedlock. During the pregnancy, the mother informed the Appellees/Garzas that she was going to allow the baby to be adopted, and the Appellees offered to do so. Petition for adoption, alleging the father's identity was unknown, was filed after birth. Subsequently, the father intervened claiming paternity. Then, by amended petition, termi-nation of the Appellant/father's rights was requested. The Garzas were named tempo-rary managing conservators, and the fa-ther was allowed visitation rights in an agreed order from the court. No child support was ordered from the father. Ter-mination of the father's rights was granted upon the jury's findings that the father failed to support the child in accordance with his ability during a period of one year ending on or after six months before the date of filing petition, and that it was in the best interest of the child.

In that the points of error concern legal and factual insufficiency assertions, we set forth the standards of review we apply to such points. The burden of proof in a termination case is constitutionally mandat-ed to be clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Clear and convincing evidence is "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. Add-ington*, 588 S.W.2d 569 (Tex.1979). Ac-tions which break the ties between a parent and child can never be justified without the most solid and substantial reasons; the proceedings should be strictly scrutinized; and the State bears a serious burden of justification before intervention in his final act of termination. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex.1976), *Shapley v. Tex-as Department of Human Resources*, 581 S.W.2d 250, 254 (Tex.Civ.App.—El Paso 1979, no writ). In considering an attack on the legal sufficiency of the evidence, we consider only the evidence and inferences which support the finding, and we dis-regard all evidence and inferences to the contrary. In considering an attack on the factual sufficiency of the evidence, we must consider all of the evidence to ascer-tain if the evidence is so weak that it could not produce a firm belief or conviction in the mind of the trier of facts that the challenged finding is true. *In the Interest of S.H.A., a Child*, 728 S.W.2d 73 (Tex.App. —Dallas 1987, no writ).

Points of Error Nos. One and Three con-tend the evidence is legally and factually

insufficient to support the finding that the Appellant had failed to support the child in accordance with his ability during a period of one year.

To support a termination under Tex.Fam. Code Ann. sec. 15.02(1)(F) (Vernon 1986), there must be a period of twelve consecutive months of failure to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition. *Brokenleg v. Butts*, 559 S.W.2d 853 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.). In this case, the child was born on July 20, 1987. The father signed a statement of paternity on November 6, 1987, which was left with the clerk of the court on November 9, 1987, but not filed until leave of court was obtained on July 27, 1988. The amended petition to terminate parental rights was filed on July 26, 1988. There is twelve months and six days between the birth of the child and the filing of the petition to terminate.

It is contended that the calculation of time cannot commence until there is a court order adjudicating paternity, or a filing of a statement of paternity under Tex.Fam. Code Ann. sec. 13.22 (Vernon Supp.1990), or the admission of paternity under Section 15.023.

■ There is no enforceable obligation to support an illegitimate child prior to the establishment of paternity. An action to establish paternity and enforce this obligation does not create a duty; it merely provides the machinery for the enforcement of a duty already existing. Liability for support attaches only as part of the responsibility for having brought the child into being. *In the Interest of Miller*, 605 S.W.2d 332 (Tex.Civ.App.—Fort Worth 1980), *aff'd*, 631 S.W.2d 730 (Tex.1982). The U.S. Supreme Court has held that "a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally." *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973). The right to receive support from a parent by a legitimate child is not dependent on court order but on statute. Tex.Fam.Code Ann.

sec. 4.02 (Vernon Supp.1990). Certainly, no duty would arise if a father does not know of an illegitimate child. And there would be no duty arising in absence of a court order, where a father has doubt as to his paternity. But where there is a judicial admission or an unequivocal unretracted acknowledgment, the duty to support addressed in termination proceedings should commence from the date of admission or acknowledgment. In this case, paternity was continually acknowledged from birth.

■ A summary of the evidence is that the pregnant mother left the father to live with her former husband. This man kept the father from the mother by threat. Upon birth of the child, possession was given to the Garzas by the mother. Shortly before leaving, the father had loaned the mother some $900.00 for dental work. The mother had insurance that covered eighty percent of medical natal cost. It was agreed that instead of repaying the loan, she would apply this amount to the uninsured amount. The Garzas actually paid this amount. The Garza's took the baby from the hospital without knowledge of who the father was. The mother informed them of the father and requested that he be allowed to visit the child. This was denied. The Garzas did not request support money from the mother or father. Paternity of the father was denied by them in the initial court proceedings. The Garzas had seen the mother in the company of other men and believed the identity of the father to be unknown. The child was adequately provided for by the Garzas. The father testified he was attempting to engage the services of an attorney, that he did not offer any money and that he did nothing before executing his acknowledgment of paternity on November 6, 1989. In that month of November, he began visitation with the child. He testified that he provided the child baby food, bedding, a chest of drawers, a baby crib, high chair, car seat, toys and everything she needed when she was with him. The Garzas stated they provided the baby with food when she left with the father, and that the father only provided two dresses and some toys.

He stated that he had custody of the child every weekend he could. The temporary orders of the court provided for him to have the child two weekends a month and more, if agreed upon by the parties. The order was signed February 4, 1988. He testified he offered to give money for support to the Garzas. (Garzas denied this). He stated he was employed during this time, earning about $6,000.00 a year. His house and land payments were $287.00. He was paying $140.00 toward credit charges. Utilities were about $150.00. Tuition payment for college was $68.00 per month. He further paid more than $100.00 a month for gasoline. He spent substantial money in attempting to establish his paternity.

Under an insufficient evidence point in an ordinary case with a preponderance of evidence standard, we might well overrule it on the evidence before us. But because of the caution demanded by the Supreme Court in termination cases under Section 15.02, [*Holick v. Smith,* 685 S.W.2d 18 (Tex.1985); *Holley v. Adams,* 544 S.W.2d 367 (Tex.1976); *Schiesser v. State,* 544 S.W.2d 373 (Tex.1976); *Wiley v. Spratlan,* 543 S.W.2d 349 (Tex.1976)], we must sustain it. The evidence does not disclose when the father's debts were incurred or if they were voluntarily entered into with indifference to the child. Ostensibly, his expenses were far more than his income. There is no firm evidence as to the amounts of salary paid for any given month of the twelve month period to determine an ability to pay that particular month or to establish a pattern over a series of months. There is money spent by the father, but again without any reference to times or amounts. We do not know for certain how often the child was in the possession of the father and subject to his immediate support. The amounts spent in attempting to establish his paternity might be a reasonable expenditure affecting his ability to support the child. We do not have that amount before us. The constitutional precautions do not demand evidence that is undisputed or unequivocal, but do demand evidence that can produce a firm conviction that the father failed to support the child in accordance with his ability during the time period alleged. The evidence is insufficient. Point of Error No. Three is sustained.

Judgment of the trial court is reversed and the cause remanded for a new trial.