In the Interest of M.A.N.M., a Child.

No. 04–01–00295–CV.

Court of Appeals of Texas, San Antonio.

Feb. 6, 2002.

Rogelio Lopez, The Law Office of Rogelio Lopez, San Antonio, for Appellant.

Denise Martinez, Law Offices of Denise Martinez, P.C., Michael D. Robbins, Attorney At Law, Rudolph F. Jass, Jr. (ADL), Attorney At Law, San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice KAREN ANGELINI, Justice.

Opinion by KAREN ANGELINI, Justice.

The trial court terminated John Ramirez's parental rights to M.A.N.M. Ramirez appeals the judgment in three issues. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Anthony Medina and Tammy Sells were married at the time of trial. When they married, Sells was pregnant; Medina, however, is not the biological father of the child. John Ramirez is the child's biological father. M.A.N.M. was born in January of 1999 with cocaine in her system. Medina knew Sells was using drugs and drinking heavily, at times, during her pregnancy. Child Protective Services intervened and implemented a safety plan, allowing Medina and Sells to reside with M.A.N.M. at Medina's mother's home. Approximately one month after M.A.N.M.'s birth, Sells moved out of Medina's mother's home. Sells' parental rights to M.A.N.M. were later terminated. M.A.N.M., however, remained with Medina at his mother's home. The child refers to Medina as "Dada" and to Medina's mother as "Mamau." At the time of trial, Medina had applied for insurance for M.A.N.M. and, while he and his mother are at work, M.A.N.M. is in daycare. Medina's mother believes it is in M.A.N.M.'s best interests to terminate Ramirez's parental rights and allow the child to remain with the "only family that she knows, the family that's been there from the very beginning." Medina also believed it was in M.A.N.M.'s best interests for Ramirez's parental rights to be terminated.

Before M.A.N.M.'s birth, Ramirez provided some financial support to Sells, with the understanding that the money was for the unborn child. Ramirez was employed "off and on" and earned eight dollars an

hour. After M.A.N.M. was born, Ramirez offered to pay Medina money, conditioned on being able to see the child. Ramirez, however, did not provide any support to Medina.

Ramirez contacted C.P.S. on February 5, 1999, and again on March 27, 1999, expressing his intent to pursue his legal rights as M.A.N.M.'s father and leaving a number where he could be contacted. C.P.S. did not consider Ramirez as a "participating family member" because Sells was married to Medina at the time of M.A.N.M.'s birth. C.P.S. advised him to seek legal assistance to establish paternity. Until he did so, Ramirez had no right to visit the child, absent cooperation from Sells.

Because Ramirez did not have the financial ability to hire an attorney, he sought the assistance of Legal Aid. Legal Aid referred him to the Attorney General's Office. Because Ramirez did not have M.A.N.M.'s name or social security number, the Attorney General was unable to provide him with assistance. Ramirez then hired his own attorney.

Ramirez was made aware of the petition to terminate his parental rights in May of 2000. The parties agreed to a paternity test, which identified him as M.A.N.M.'s biological father. Ramirez also agreed to submit to a drug test. Ramirez tested positive for cocaine and marijuana use. Ramirez first started to use drugs recreationally as a teenager. Occasionally, Ramirez bought drugs. Ramirez admitted that he spent at least $2,000 on drugs during the two years preceding trial and that he could have used that money to hire a lawyer to assist him in protecting his rights as M.A.N.M.'s biological father. Within the month before trial, Ramirez began attending Narcotics Anonymous meetings twice a week. He plans to continue attending the meetings. Ramirez's

parents have expressed an interest in helping him recover from his addiction. Ramirez admitted that he should have stopped using drugs once he learned his child had been born dependent upon them.

Ramirez pays $200 in rent to live with his parents. He has lived with them his entire life. His mother testified that Ramirez is capable of earning and saving money. At the time of trial, Ramirez was working forty hours a week and earning ten dollars an hour. Ramirez's parents support him "100 percent" regarding obtaining custody of M.A.N.M. Ramirez testified he was ready to take on the responsibility of a two-year-old child, particularly with the help of his family.

Wendelyn Thornton, a Child Protective Services Program Administrator, testified about M.A.N.M.'s family's history. She also testified that Sells had indicated to her that Ramirez was abusive. Medina's mother also testified that Sells told her a restraining order was in place against Ramirez because, during her pregnancy, Sells and Ramirez were involved in an altercation. Thornton testified that it is very difficult for a child to form any significant attachment to a parent, when that child has not been exposed to the parent during the child's first two years of life.

Ramirez believes that he and his child have "a bond." According to Ramirez, M.A.N.M. recognizes him and is, at times, loving to him. Ramirez agreed that he could work with Medina to take care of M.A.N.M., but that, eventually, he intends to seek and gain full custody of the child.

The ad litem also believes that a relationship has started between M.A.N.M. and Ramirez and would like to see it continue. And, although he recognized that it would be difficult emotionally to remove the child from Medina, termination of Ramirez's parental rights was not in her best

interests. The ad litem testified that he has seen Ramirez interact with M.A.N.M. According to the ad litem, Ramirez interacted well with and was patient with the child. Medina's mother, however, testified that although M.A.N.M. is somewhat more restrained than she normally is when she's with Ramirez, she does not perceive Ramirez as a threat to the child.

Based on the evidence adduced at trial, the trial court terminated Ramirez's parental rights. Specifically, the court found based upon clear and convincing evidence that Ramirez "failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of this petition." The court also found termination was in M.A.N.M.'s best interests.

Ramirez appeals the termination. He challenges the legal and factual sufficiency of the evidence supporting the trial court's findings. He further maintains that the trial court abused its discretion in denying his motion for new trial.

### SUFFICIENCY OF THE EVIDENCE

A. *Standard of Review*

█ Involuntary termination of parental rights is a drastic remedy. *In the Interest of G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). Termination involves fundamental constitutional rights, and the proceeding must be strictly scrutinized. *Id.* at 846. There is a strong presumption that the best interests of a child are usually served by retaining custody in the natural parents, and the termination of parental rights cannot be justified without the most solid and substantial reasons. *Wiley v. Spratlan,* 543 S.W.2d 349, 352 (Tex.1976). However, the need for permanence is the paramount consideration for the child's present and future physical and emotional needs. *Dupree v. Texas Dep't of Protec-*

*tive & Regulatory Servs.,* 907 S.W.2d 81, 87 (Tex.App.-Dallas 1995, no writ). The goal of establishing a stable, permanent home for a child is a compelling government interest. *Id.*

█ The Texas Family Code, in order to protect the relationship between a parent and child, requires a showing by clear and convincing evidence that the parent in question behaved in some manner that was detrimental to the child. TEX. FAM.CODE ANN. § 161.001 (Vernon Supp.2001). This intermediate standard colors our review of the factual sufficiency of the evidence in a termination case. *See In re B.T.*, 954 S.W.2d 44, 46 (Tex.App.-San Antonio 1997, writ denied). Applying this standard to our review of a trial judge's findings, we review all of the record evidence and ask whether sufficient evidence was presented to produce in the mind of a rational fact finder a "firm belief or conviction as to the truth of the allegations sought to be established." TEX FAM.CODE ANN. § 101.007 (Vernon Supp.2001); *In re G.M.,* 596 S.W.2d 846, 847 (Tex.1980). The trial court's judgment will be set aside only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Djeto v. Texas Dep't of Protective & Regulatory Servs.,* 928 S.W.2d 96, 97 (Tex.App.-San Antonio 1996, no writ).

█ In deciding a legal sufficiency issue, we consider only the evidence tending to support the finding and disregard all evidence to the contrary. *Southwestern Bell Mobile Sys., Inc. v. Franco,* 971 S.W.2d 52, 54 (Tex.1998); *In re R.D.,* 955 S.W.2d 364, 368 (Tex.App.-San Antonio 1997, pet. denied). If more than a scintilla of evidence supports the trial court's findings, the appealing parent cannot prevail on a legal sufficiency point. *In re R.D.,* 955 S.W.2d at 368.

## B. Failure to Support

██ The trial court found that Ramirez failed to support M.A.N.M. "in accordance with his ability during a period of one year ending within six months of the date of this filing of this petition." Tex. Fam.Code. Ann. § 161.001(1)(F) (Vernon Supp.2001). To terminate parental rights on non-support grounds, the evidence must establish that the parent failed to support the child for twelve consecutive months and had the ability to contribute to the support of the child for twelve consecutive months. In re D.L.B., 943 S.W.2d 175, 177 (Tex.App.-San Antonio 1997, no writ); In re Guillory, 618 S.W.2d 948, 951 (Tex. App.-Houston [1st Dist.] 1981, no writ). One court of appeals has found there was legally and factually sufficient evidence of nonsupport, when the parent admitted that he could have earned enough money to meaningfully contribute to his daughter's support, but did not. Phillips v. Texas Dep't of Protective and Regulatory Servs., 25 S.W.3d 348, 357–58 (Tex.App.-Austin 2000, no pet.).

It is undisputed here that Ramirez did not provide support to M.A.N.M. Ramirez contends, however, that Medina failed to meet his burden of proving that Ramirez had the ability to pay support for twelve consecutive months. Ramirez relies on Jimenez, ex rel. Little v. Garza, 787 S.W.2d 601 (Tex.App.-El Paso 1990, no writ) for his assertion.

In Jimenez, the appeals court reversed a termination based on nonsupport on legal sufficiency grounds. Id. at 604. The father testified that, at first, he offered no money to support the child, but that later he offered to give money for support. Id. at 603–04. The father further explained that once he began visitation with the child, he provided the child with food, bedding, furniture, and toys. Id. at 603. The evidence showed the father's annual income and monthly bills. The court held, in light of the constitutional precautions involved in termination cases, that

> "[t]here is no firm evidence as to the amounts of salary paid for any given month of the twelve month period to determine an ability to pay that particular month or to establish a pattern over a series of months. There is money spent by the father, but again without any reference to times or amounts."

Id.

In this case, there is likewise no "firm" evidence of Ramirez's salary during the twelve month period before trial. Ramirez testified that he was working "off and on" with temporary agencies and that he never had full-time employment. He further testified that, at the time of trial, he was working forty hours a week, earning ten dollars an hour. However, Ramirez testified that had Medina allowed him visitation with the child, he would have provided support for her. Ramirez also admitted that he spent a significant amount of money on drugs over the past two years. Further, Ramirez's mother testified that he was able to earn and save money and had done so in the past. Essentially then, Ramirez could have contributed to the support of his child, but did not. Phillips, 25 S.W.3d at 357–58.

Viewing the evidence in a light favorable to the judgment, we hold there is legally sufficient evidence to support the trial court's non-support finding. Furthermore, we hold factually sufficient evidence was presented to produce in the mind of the trial judge a "firm belief or conviction" that Ramirez had the ability to provide support to M.A.N.M. Ramirez's first issue is overruled.

## C. Best Interests

██ Ramirez also challenges the sufficiency of the evidence supporting the tri-

al court's finding that termination of the parent-child relationship was in his child's best interest. Accordingly, we examine the evidence in light of the following factors:

(A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

*Holley v. Adams,* 544 S.W.2d 367, 371–372 (Tex.1976); *In re D.G.,* 5 S.W.3d 769, 772 (Tex.App.-San Antonio 1999, no pet.).

Quite often, the best interest of the child is infused with the statutory offensive behavior. While there are instances where the offending behavior will demand termination of parental rights, there are also those cases where the best interest determination must have a firm basis in facts standing apart from the offending behavior. Although such behavior may reasonably suggest that a child would be better off with a new family, the best interest standard does not permit termination merely because a child might be better off living elsewhere.

*In re D.M., B.W., and J.C.W.,* 58 S.W.3d 801, 814 (Tex.App.-Fort Worth 2001, no pet. h.). This case is one where Ramirez's "offending behavior" is not egregious enough, on its own, to warrant a finding that termination is in the child's best inter-

ests. Accordingly, we must look to other, independent facts to support the trial court's best interests finding.

M.A.N.M. is two years old. She was born addicted to cocaine and is currently on medication. Over the course of six visits, M.A.N.M. and Ramirez have developed a "bond," even though M.A.N.M. appears more reserved than normal in Ramirez's presence. There was no evidence presented that Ramirez would present any danger to M.A.N.M., now or in the future. In fact, the ad litem testified that Ramirez interacted well with M.A.N.M. and Medina's mother testified that she did not perceive Ramirez to be a threat to the child. Medina and Ramirez are both young men, who live with their parents. The parents of both men have attested that they are willing to help raise M.A.N.M. We note, however, that M.A.N.M. has lived with Medina's family throughout her life. M.A.N.M. attends daycare while Medina and his mother are at work. And, Medina plans to move out of his mother's home in the future. The evidence shows that it is very difficult for a child to form any significant attachment to a parent, when that child and the parent have had no relationship during the child's first two years of life. No evidence was presented about possible programs to assist Ramirez. Furthermore, there is no evidence that Medina has ever used drugs; Ramirez admits he used drugs in the past and currently attends Narcotics Anonymous meetings.

We hold the evidence is legally sufficient to support the trial court's finding that termination of Ramirez's parental rights is in M.A.N.M.'s best interest. In addition, we hold the evidence is factually sufficient to support the trial court's finding, particularly in light of the State's interest in providing a child with a stable, permanent home. Ramirez's second issue is overruled.

## MOTION FOR NEW TRIAL

In his third issue, Ramirez argues the trial judge abused its discretion in denying Ramirez's motion for new trial in light of newly discovered evidence. The newly discovered evidence consists of facts showing Medina attempted suicide a month before M.A.N.M.'s birth.

### A. Standard of Review

A party seeking a new trial on the ground of newly discovered evidence must show that: 1) the evidence came to his knowledge since the trial; 2) it was not owing to want of due diligence that the evidence had not come to his attention sooner; 3) the evidence is not cumulative; and 4) the evidence is so material that it would probably produce a different result if a new trial were granted. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex. 1983); *In re J.M.*, 955 S.W.2d 405, 408 (Tex.App.-San Antonio 1997, no pet.). Whether to grant or deny a motion for new trial lies within the sound discretion of the trial court, and the court's decision will not be disturbed absent a clear abuse of discretion. *Jackson*, 660 S.W.2d at 809; *In re J.M.*, 955 S.W.2d at 408. When a trial court refuses to grant a new trial based on newly discovered evidence, every reasonable presumption is to be made in favor of the trial court's decision. *Jackson*, 660 S.W.2d at 809–10; *In re J.M.*, 955 S.W.2d at 408.

### B. Application

Ramirez testified, at the hearing on his motion for new trial, that following the trial he received information that raised a concern about Medina's ability to care for M.A.N.M. Medina also testified at the hearing. Medina and Sells, the child's mother, were married in December of 1998. Their relationship ended in February of 1999. Approximately two months before Medina and Sells broke up, Medina attempted to commit suicide. According to Medina, the reason he attempted suicide was because he and Sells were having problems and he "couldn't deal with her." Medina went to the hospital for treatment of his wounds, but did not seek psychological counseling. Medina has not had any depressed feelings since then. He further testified that these events have in no way affected his ability to care for M.A.N.M.

It is undisputed that this evidence came to Ramirez's attention since the trial. Ramirez contends that he could not have known about these facts before trial because he did not have any relationship with Medina or his family. However, Ramirez would have been able to draw out these facts from Medina in discovery. The record does not reflect that Ramirez sought through discovery any information on Medina's medical and psychological history. And, Ramirez made no attempt at trial to question Medina about any medical or psychological problems he may have experienced. Ramirez has failed to make the requisite showing that the evidence did not come to his attention sooner for lack of due diligence. Because Ramirez has not met the second requirement for granting a new trial based on newly discovered evidence, we need not reach the remaining two factors. Ramirez's third issue is overruled.

## CONCLUSION

The evidence is legally and factually sufficient to support the trial court's finding that Ramirez failed to support M.A.N.M. for twelve consecutive months during the eighteen-month period preceding the petition's filing. Furthermore, the evidence is legally and factually sufficient to support the trial court's finding that termination of Ramirez's parental rights to M.A.N.M. is in her best interests. Finally, the trial

court did not abuse its discretion in denying Ramirez's motion for new trial based on newly discovered evidence. Accordingly, we affirm the trial court's judgment.

Dissenting Opinion by CATHERINE STONE, Justice.

The natural rights existing between a parent and child are constitutionally-protected interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). These natural rights are "essential basic civil right[s] of man." *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). In recognition of the importance of the rights between parents and their children, courts presume that retention of the parent-child relationship is in the best interest of the child. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex.1976). Consequently, involuntary termination of parental rights is a "drastic remedy" of such weight and gravity that due process requires termination be justified by clear and convincing evidence. *See In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). These statements are not mere form language to be included in appellate decisions—they are statements of principles of great constitutional and human dimension. In my opinion, these principles have not been honored in this case.

No doubt motivated by the best of intentions, the actions of Child Protective Services set in motion the instant litigation, which proceeded with minimum regard for the constitutionally-protected parental rights of John Ramirez, the biological father of M.A.N.M. The trial court compounded the disregard of constitutional safeguards by rendering a judgment based on evidence that is, at best, perfunctory. Accordingly, I respectfully dissent.

## Grounds for Termination

To terminate John Ramirez's parental rights, the trial court was required to find by clear and convincing evidence that Ramirez engaged in offensive conduct as set forth in Tex. Fam.Code Ann. § 161.001 (Vernon Supp.2002). Although Medina sought termination on the sole basis that Ramirez failed to legitimate the child within a one year period, this basis was not proven at trial, nor did the trial court make a finding on this element. Rather, Medina produced evidence regarding Ramirez's failure to support the child for a one year period and the trial court rendered its judgment of termination on this statutory ground. When issues not raised by the pleadings are tried by implied consent of the parties, they are treated in all respects as if they had been raised in the pleadings. Tex.R. Civ. P. 67. Because Ramirez failed to object to the disparity between the pleadings and the proof, we may conclude that the issue of non-support was tried by consent. *See Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex.1993) (determining issues had been tried by consent because both sides advanced their positions at trial).

Although he was never judicially ordered to provide child support, Ramirez gave the child's mother money during her pregnancy and offered to provide support to Medina if he could visit with his daughter. It seems disingenuous, at best, to rebuff a party's claim of paternity, deny him visitation until paternity is legally established, yet use the absence of support as grounds for termination. Moreover, the only evidence the trial court could have relied upon to determine Ramirez had the ability to pay, but did not, was Ramirez's admission that he had spent money on drugs. There was no testimony as to the source of the money for drugs nor any indication of what other basic necessities Ramirez may have foregone to purchase

drugs. The court simply assumed that Ramirez could have supported the child instead of buying drugs. Without evidence of Ramirez's educational level, employment history, earning potential, actual income, or financial needs and expenses, I do not agree that Medina met his burden to show Ramirez had the ability to pay.

The issue is further complicated by other factors relating to the question of where and to whom Ramirez was to provide financial support. Ramirez knew that his daughter was not with her mother, and for a certain period of time he did not even know where the child was. His request for information and assistance from Child Protective Services was rejected. His request for assistance from Legal Aid was rejected. Finally, he sought assistance from the Attorney General's office, and after a delay of more than six months, he was told that the Attorney General's office could not help him. The record before us simply does not contain evidence sufficient to produce a firm belief or conviction that Ramirez failed to support M.A.N.M. "in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition." *See* TEX. FAM.CODE ANN. § 161.001(1)(F) (Vernon Supp.2002).

### BEST INTEREST OF THE CHILD

Even if we *assume* the evidence is legally and factually sufficient to support termination on the basis of non-support, I do not believe there is sufficient evidence that termination is in the best interest of the child. Indeed, the evidence is to the contrary.

Termination of parental rights cannot be sustained unless such a drastic action is in the best interest of the child. *In re G.M.*, 596 S.W.2d at 847. Although the majority correctly recites this standard, I do not believe it has correctly reviewed the evidence in light of the *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976) (setting forth various factors to be considered by trial court in determining whether termination of parental rights serves best interest of child). An examination of these factors reveals that severing the parental rights of Ramirez and his daughter is not in her best interest.

*Emotional and Physical Needs of Child*

Courts presume that it is emotionally best for a child to retain ties with the child's biological parents. *Wiley*, 543 S.W.2d at 352. Ramirez professed his desire to maintain a relationship with his daughter. He expressed his willingness to assume parental responsibilities, and his conduct since the child's birth confirmed his expressed desire. Ramirez has the support of his family in this endeavor. His mother expressed her willingness to help, and she provides a stable home that all agreed was not a threat to the child.

*Parental Abilities Parent Seeking Custody*

Ramirez, like Medina, is admittedly young, but because he has had limited access to his daughter, he is less experienced in parenting than Medina. Nonetheless, the reports from Kids Exchange regarding Ramirez's supervised visitation indicate appropriate interaction and bonding between Ramirez and his daughter.

*Programs Available to Assist the Parent*

As noted, evidence presented at trial indicates that Ramirez's mother is willing to assist her son in his parenting of M.A.N.M. There is no evidence that Ramirez planned to take any formal parenting classes, but he did acknowledge a prior drug problem and was actively participating in Narcotics Anonymous.

*Plans for the Child and Stability of the Home*

Ramirez has extended family support in his effort to parent his daughter. He also

has a stable non-threatening home to share with her. Ramirez stated his desire to ultimately seek full custody of his daughter, and this factor clearly weighed heavily in the trial court's determination. However, custody is *not* at issue in this termination proceeding.

*Acts or Omissions Indicating Parent–Child Relationship is Not Proper*

The only acts or omissions that can be referred to are the lack of support and the failure to complete the legitimization process within a year. But these omissions cannot be viewed in a vacuum. Indeed, the final *Holley* factor requires that these omissions be judged in light of any justifying excuse.

*Excuse for the Acts or Omissions*

At this point, M.A.N.M. has lived with the Medina family for three years—they are the only family she has known. Any caring person would hesitate to disrupt that relationship. Yet Ramirez's lack of participation is not for lack of trying. He began his quest to have contact with his daughter one month after her birth. Every governmental agency that he contacted essentially closed the door in his face. When suit was filed to terminate Ramirez's parental rights, he was cited by publication despite his having left a phone number with Child Protective Services; Ramirez discovered the pending suit by accident. Ramirez made repeated attempts to establish his role as a father to his child, yet each attempt was rebuffed. In addition, while the caseworker ignored Ramirez's overtures, she encouraged Medina to take legal action to ensure the child would remain in his home. Even when the child's mother expressed her desire for M.A.N.M. to live with her birth father instead of Medina, the caseworker chose not to respond after she missed an appointment to discuss the matter. Ramirez's meetings with attorneys at Legal Aid and the Attorney General's office were also fruitless.

To now rely on the lapse of time since the child's birth and the possibility of disruption of the child's routine as grounds for terminating Ramirez's parental rights is, in my view, nothing short of unconscionable.

I am also concerned because I believe that in this case the "best interest of the child" has become the functional equivalent of the "better circumstances for the child." The El Paso Court of Appeals has cogently expressed the difficulties inherent in applying the best interest standard:

[T]he nuances and complexity of human situations make the development and application of the axiom—best interests of the child—incredibly difficult. It is all the more difficult because, unlike other legal standards which rely on the basic assumption that reasonable people applying the standard can come to an agreement, it is not always clear that reasonable people can agree on what is best for a child. Our only hope is to try to follow determinable standards that avoid any more chaos and pain.

\* \* \* \* \* \* \* \* \* \*

While [a parent's] bad acts or omissions might reasonably suggest that a child would be better off with a new family, the evidence may still be insufficient to satisfy the clear and convincing standard. The best interest standard does not permit parental termination merely because a child might be better off living elsewhere. Otherwise, the termination statute might be used for a massive reallocation of children to better and more prosperous parents.

*In re C.H.*, 25 S.W.3d 38, 52–53 (Tex.App.-El Paso 2000, pet. granted).

The tragedy here for both father and daughter is that if Ramirez's attempts to be the child's father had not been thwarted—had he instead been helped to connect with his daughter—none of this would have transpired. Medina's counsel argued, and the trial court evidently agreed, that if Ramirez's parental rights were not terminated, Medina would incur further court battles and legal expenses. It is evident from the record that the most significant factor guiding the trial court's decision was the length of time M.A.N.M. had been living with Medina and his family, and the high price the child would pay if she were removed from that home. Ramirez's expressed desire to obtain sole custody of his daughter undoubtedly strengthened the trial court's resolve. Removal from Medina's home, however, is not at issue. Less drastic means were available to ensure continuity for the child without terminating Ramirez's parental rights and severing the budding relationship between father and daughter. The trial court could have awarded permanent managing conservatorship to Medina while granting possessory conservatorship to Ramirez, or could have arranged other means of visitation. The child's need for continuity of care and caretaker would have been met, and she could also have enjoyed a relationship with her biological father.

The solution to this cauldron of emotionally-charged issues need not be all or nothing. Indeed, the ad litem appointed to represent the child and protect her best interest offered a solution—let this child know the joys of two loving fathers. This solution, fully supported by the law and the evidence, was erroneously rejected by the trial court. Accordingly, I dissent.