# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-03-00633-CV

Paul Sanders, Appellant

v.

Texas Department of Protective and Regulatory Services, Appellee

FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
NO. 191,499-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After an associate judge ruled that appellant Paul Sanders's parental rights to his daughter, A.D., should be terminated, he appealed to the district court.[1] After a hearing, the district court signed a decree terminating his parental rights. In one issue, Sanders argues that the evidence is factually insufficient to support the district court's decision to terminate his parental rights.[2] We affirm the district court's decree of termination.

---

[1] In a suit affecting a parent-child relationship, a party may appeal an associate judge's report to the referring court. Tex. Fam. Code Ann. § 201.015 (West 2002).

[2] Although Sanders states that his appellate issue is that "[t]he Evidence was factually insufficient to support the Trial Court's judgment that termination . . . was in the best interest of the child," he challenges both the findings that termination was in A.D.'s best interest and that he engaged in statutorily offensive conduct. *See id*. § 161.001 (West 2002).

## Factual Background

A.D. was born on April 2, 2002, and on April 5, the Texas Department of Protective and Regulatory Services took her into emergency custody on grounds that her mother, Evelyn Crumb, had used alcohol and marijuana during the early portion of her pregnancy and had a history of physical abuse and neglect of her other children.[3] On April 5, Sanders was ordered to attend parenting classes, therapy, counseling, submit to periodic drug testing, and pay $100 in monthly child support; he was granted supervised visitation with A.D.

From April 2002 until April 2003, the Department reported on Sanders's compliance, noting that he had not undergone a drug assessment or attended therapy or financial counseling. Sanders took parenting classes in May 2002 and submitted to drug tests throughout the year, testing negative all but once; he tested positive for marijuana in November 2002. From April through September 2002, Sanders attended only seven of twenty-one scheduled visits with A.D., but thereafter attended visitation as scheduled. After a mediation in April 2003, Sanders was ordered to complete a drug assessment in April, complete financial counseling by May, attend therapy, complete anger management classes by the end of June, pay child support, undergo weekly drug tests, and participate in two hours of visitation per week.

In July 2003, the Department recommended that Sanders's parental rights be terminated and that A.D. be placed for adoption. The Department reported that Sanders had

---

[3] A.D. is Crumb's seventh child. Crumb's parental rights to three of her children were terminated in 1998 and 2001, and her remaining three children were living with relatives. Crumb's parental rights to A.D. were also terminated in this proceeding, but that termination is not before the Court in this case. We will therefore only discuss the evidence and orders as they relate to Sanders.

2

completed financial counseling and attended most scheduled visitations, but had not completed anger management, had missed several drug tests, had not provided the Department with his address when requested to do so, and had missed a therapy appointment, resulting in the cancellation of therapy. The Department concluded that Sanders had made "minimal progress" and had not addressed issues that could endanger A.D. On July 24, the associate judge found that Sanders's parental rights should be terminated, and Sanders appealed to the district court.

On August 21, 2003, a final hearing was held before the district court ("the August hearing").[4] Therapist Jamie Love testified that she worked with Sanders from approximately January 2003 until April. Love testified that Sanders had trouble following through and completing required tasks and did not seem to have a clear grasp of A.D.'s needs. She believed Sanders tried to comply with court orders, but was unable to maintain the effort needed to complete the requirements. Sanders did not seem to understand how his behavior contributed to the Department's taking custody of A.D., and instead blamed it on Crumb and others. Love agreed that Sanders might not have the cognitive ability to understand the Department's involvement and believed that he could not meet A.D.'s emotional and physical needs. Asked what portion of section 161.001 Sanders had violated, Love answered:

> When the court got involved they gave them [Sanders and Crumb] expectations of
> what they needed to do. He knew that's what would have to occur for him to get the

---

[4] Sanders did not appear at the August 2003 hearing, and his attorney stated that he did not know if Sanders had received notice because he no longer lived at the address to which notice was sent. His attorney said he did not know Sanders's new address and so had not been able to notify him of the hearing. At a hearing on his motion for rehearing, Sanders appeared and testified about why he missed the August hearing. He did not testify that he never received notice, but stated that he mistakenly thought the hearing was scheduled for August 22, one day after it was actually held.

3

child back. During that time he did not work on most of those expectations, and when he did it was only superficially. And . . . the fact that he did test positive for marijuana is an added thing to show.

Love believed it was in A.D.'s best interest to have Sanders's parental rights terminated because otherwise A.D. would remain in an unsettled state for an undefined period of time while Sanders tried to meet the Department's requirements; she believed Sanders would have to work hard for several years to be an adequate parent. Love testified that A.D. could not safely be placed with Sanders.

Lisa Cardenas, the Department caseworker assigned to A.D., testified that child support payments were ordered in April 2002, and then abated as of April 3, 2003, to allow Sanders to pay for his required weekly drug testing. During the year in which payments were ordered, Sanders did not make any payments. In April 2003, Sanders was ordered to undergo weekly drug tests, but at the time of the August hearing had only taken one. Cardenas testified that Sanders was referred to counseling early in this proceeding, but missed appointments and attended sporadically until December 2002, when he initiated counseling himself. After he missed another appointment in March, therapy was cancelled until the Department agreed in April to resume funding therapy pursuant to the mediation agreement. Cardenas testified that while this cause was pending, the Department learned that he was having visitation with his other children and told him he was not supposed to have contact with them; Sanders "was upset about it" and "wouldn't give his address for anyone to follow up." Cardenas also said that Sanders did not return phone calls from the Department or A.D.'s guardian ad litem and missed several visitations with A.D. from April 2003 through June. Finally, Cardenas testified that Sanders was referred to the Department in 1991 for

4

leaving two young children alone while he went to a store and in 1994 for physically abusing his stepchildren and that he was convicted in 2001 of assaulting his wife.[5]

Cardenas was concerned that Sanders might have left A.D. alone in a hospital room with Crumb, who had her rights to three children terminated earlier and who admitted to using drugs and alcohol. However, she acknowledged that Sanders did not do anything to physically harm A.D. or abandon Crumb or A.D. Cardenas recommended that Sanders's rights be terminated because he had not undergone anger management classes and had missed several visitations, weekly drug tests, and a therapy session, resulting in a cancellation of that Department-funded service. Further, Sanders had not provided a safe, stable environment, and the Department did not even know where he was living or working at the time of the August hearing. Sanders did not seem to understand why Crumb was a danger to A.D. or why he and Crumb could not raise A.D. together. Cardenas did not believe that Sanders's parenting skills had improved or that he was able to meet A.D.'s emotional and physical needs, and she testified that it was in A.D.'s best interest for Sanders's parental rights to be terminated and for A.D. to be adopted.

After hearing the testimony, the district court found that Sanders had engaged in conduct that endangered A.D., constructively abandoned A.D., failed to support A.D. in accordance

---

[5] Sanders was also convicted of driving while intoxicated, but the record does not state when that conviction occurred, other than that it was "a few years ago."

5

with his ability, and failed to comply with the provisions of a court order,[6] and that termination was in A.D.'s best interest.

## Standard of Review

A person's parental rights may be terminated only if the trial court finds (1) that the parent has engaged in conduct set out as statutory grounds for termination, and (2) that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001 (West 2002); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). The Department must prove those elements by clear and convincing evidence.

---

[6] The Department's original petition alleged that termination was proper if it was shown that Sanders engaged in conduct or placed A.D. with others who engaged in dangerous conduct; abandoned Crumb during her pregnancy and failed to support A.D. since her birth; constructively abandoned A.D.; failed to comply with a court order; or executed an affidavit relinquishing his parental rights. The record reflects that the associate judge found only some of those allegations to be true. Markings on the document show that the associate judge did *not* find that Sanders (1) had engaged or placed A.D. with persons who engaged in dangerous conduct; (2) abandoned Crumb; or (3) executed an affidavit of relinquishment. The markings appear to show that the associate judge *did* find that Sanders had (1) failed to support A.D. since birth and (2) failed to regularly visit or maintain significant contact with A.D., thus constructively abandoning her.

In an amended petition filed July 29, after the associate judge made his ruling, the Department alleged that Sanders had engaged in dangerous conduct; constructively abandoned A.D. for at least six months, did not make regular visitation, and demonstrated an inability to provide a safe environment; failed to support A.D. in accordance with his ability; failed to comply with a court order; or executed an affidavit of relinquishment. Sanders objected to the allegation of failure to pay child support, arguing that the Department should be held to the allegations on file before the associate judge. The Department argued that the new allegation should be allowed because the district court was hearing the appeal from the associate judge's findings *de novo*. *See* Tex. Fam. Code Ann. § 201.015(c). We need not decide this issue, however, because the associate judge underlined and circled the allegation that Sanders "failed to support the child since birth," which evidences a finding of a failure to support. Thus, the issue was raised before the associate judge.

6

Tex. Fam. Code Ann. § 161.001; *C.H.*, 89 S.W.3d at 23. Clear and convincing evidence is an intermediate standard of proof that falls between the criminal standard of proof beyond a reasonable doubt and the civil standard of a preponderance of the evidence. *C.H.*, 89 S.W.3d at 23-25. Evidence is clear and convincing if it produces in the fact-finder's mind a firm belief as to the truth of the allegations supporting termination. *Id.* at 23 (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)). We review the factual sufficiency of the evidence by viewing all of the evidence and determining whether a reasonable fact-finder could have resolved disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). If the disputed evidence is such that a reasonable fact-finder could have formed a firm belief as to the truth of the State's allegations, the evidence is factually sufficient. *Id.*; *C.H.*, 89 S.W.3d at 25. We must maintain appropriate deference to the fact-finder's role. *J.F.C.*, 96 S.W.3d at 266-67.

Some of the factors to consider in determining a child's best interests are: the child's wishes; her emotional and physical needs now and in the future; emotional or physical danger to the child now and in the future; the parenting abilities of the parties seeking custody; programs available to help those parties; plans for the child by the parties seeking custody; the stability of the proposed placement; the parent's conduct indicating that the parent-child relationship is improper; and any excuses for the parent's conduct. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). Permanence is of paramount importance in considering a child's present and future emotional and physical needs. *In re T.D.C.*, 91 S.W.3d 865, 873 (Tex. App.—Fort Worth 2002, pet. denied); *In re M.A.N.M.*, 75 S.W.3d 73, 77 (Tex. App.—San Antonio 2002, no pet.); *Salas v. Texas Dep't of Protective & Regulatory Servs.*, 71 S.W.3d 783, 792 (Tex. App.—El Paso 2002, no pet.).

7

**Discussion**

The district court found that Sanders had engaged in conduct that endangered A.D., constructively abandoned her for six months, failed to support her as he was able, and failed to comply with a court order. *See* Tex. Fam. Code Ann. § 161.001(1)(E), (F), (N), (O). If the evidence is factually sufficient to support a finding of any of those grounds, we will sustain the termination. *See In re M.C.M.*, 57 S.W.3d 27, 32 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

In April 2002, more than a year before the district court heard this case, Sanders was ordered to undergo drug assessment, attend therapy and anger management classes, and pay child support. In April 2003, after mediation, Sanders was ordered to complete a drug assessment by the end of April, complete anger management classes by the end of June, take weekly drug tests, and attend therapy, with a specific warning that therapy would be cancelled if he should miss even one session; child support was abated so Sanders could pay for drug testing. Sanders never took an anger management class or the drug assessment and he missed a therapy session, resulting in the cancellation of Department-funded therapy. Sanders never made any child support payments in the year before the child support was abated. After the Department learned that Sanders was seeing his other children in violation of the Department's instructions, he failed to provide his address. Finally, although Sanders took regular drug tests up until April 2003, since the mediation, he had taken only one of ten weekly drug tests.

Although Sanders did comply with certain court orders, such as taking parenting and financial planning classes and participating in most scheduled visitations, Sanders clearly violated other portions of court orders entered while this cause was pending. Those violations constitute

8

conduct sufficient to support termination under section 161.001(1)(O). Further, Sanders's failure to pay any child support from April 2002 until April 2003 warrants termination under section 161.001(1)(F).

Love and Cardenas both testified that termination was in A.D.'s best interest. Love did not believe it would be safe for Sanders to care for A.D. She testified that Sanders did not seem to understand why the Department was involved, seemed to blame only other people, and did not understand how his actions had contributed to A.D.'s removal. Love did not think Sanders could sustain the effort necessary to become an adequate parent, much less care for a child for a lifetime. Cardenas likewise testified that Sanders made a series of bad choices, never showed that he could provide a safe environment, failed to inform the Department of his current address and phone number, and did not understand why he and Crumb could not raise A.D. together. Cardenas said that the Department intended to find an adoptive family for A.D. and that she was very "adoptable." Sanders was given considerable help by the Department to improve his parenting skills and his ability to provide a stable, safe environment. He did not avail himself of the offered and ordered services and missed a number of appointments, resulting in the cancellation of therapy twice.

The district court found by clear and convincing evidence that the Department's allegations were true and that termination was in A.D.'s best interest. We hold that the evidence is factually sufficient to support the findings that Sanders violated a court order and failed to support A.D. for a period of one year and that termination was in A.D.'s best interest.

9

## Conclusion

Having held that the evidence is factually sufficient to support the findings that Sanders's rights should be terminated and that termination is in A.D.'s best interest, we affirm the judgment of the district court.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   June 10, 2004

10