# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00655-CV

**Gary Lynn Karl, Appellant**

**v.**

**Texas Department of Protective and Regulatory Services, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT NO. 195,480-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Gary Lynn Karl appeals the trial court's decree terminating his parental rights to his son, J.H., and appointing the Texas Department of Protective and Regulatory Services (the Department) permanent managing conservator of the child. Karl challenges the factual sufficiency of the evidence to support the trial court's finding that he engaged in conduct that endangered the physical or emotional well-being of J.H. and that termination of his parental rights was in J.H.'s best interest. We hold that the evidence is factually sufficient and affirm the decree of termination.

## BACKGROUND

In June 2000, Karl was released from prison after serving sixteen years and eleven months for the murder of his brother in 1984. Approximately a year and a half after his release on

parole, he met and impregnated twenty-year-old Sherry Houston. About three months later, he committed the felony offense of sexual assault against another twenty-one-year-old woman. As a result of his subsequent conviction, Karl's parole was revoked, and he was sentenced to fifteen years in prison, with a possibility of parole after seven years.

While Karl was in prison, Houston gave birth to J.H. on December 6, 2002. Only four days later, the Department removed J.H. from Houston's care due to her neglectful supervision of the child, and the court appointed the Department temporary managing conservator. Approximately three months later, Houston signed an affidavit relinquishing her parental rights to J.H. Immediately thereafter, the Department filed a petition seeking termination of Karl's parental rights and a permanency plan recommending adoption of J.H. by his foster family.

J.H. is currently in foster care with a family who is willing and able to adopt him. The family lives in a three-bedroom home, and the father makes a comfortable living while the mother stays at home. At the bench trial, the guardian ad litem testified that J.H. has bonded with his foster parents and is developing on target and that it would be in J.H.'s best interest to be adopted by his foster family. Meanwhile, Karl is incarcerated and can provide no home for his son. He has three children from a previous marriage: two sons, ages eighteen and nineteen, and one daughter, age nineteen. All three children were raised by Karl's stepdaughter with no financial support from Karl.[1] The two sons were serving time in jail at the time of trial; Karl testified that he did not know

---

[1] While released from prison on parole, Karl had a job building fences and made $300 a week.

why his sons were incarcerated. Karl also testified that his hope was to preserve visitation rights with J.H., which would require the child to visit his father in prison and remain in foster care indefinitely.

After the bench trial, the trial court granted the Department's motion to terminate Karl's parental rights on the grounds that Karl engaged in conduct that endangered the physical or emotional well-being of the child and that termination is in J.H.'s best interest. *See* Tex. Fam. Code Ann. § 161.001(1)(E), (2) (West 2002). Karl now appeals the order, challenging the factual sufficiency of the evidence.

## DISCUSSION

Section 161.001 of the Texas Family Code sets out a two-pronged test for involuntary termination of the parent-child relationship. *See id.* § 161.001. The trial court must find, by clear and convincing evidence, that (1) the parent has engaged in one of the grounds for termination and (2) termination is in the best interest of the child. *Id.*; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). Because termination of parental rights is such a drastic act, due process requires that the petitioner justify termination by a heightened burden of proof. *In re D.T.*, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied); *Leal v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 315, 318-19 (Tex. App.—Austin 2000, no pet.). The clear and convincing evidence standard creates a higher burden because of the severity and permanency of the termination of the parent-child relationship. *D.T.*, 34 S.W.3d at 630. Clear and convincing evidence is that degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the proposition sought to be established. *C.H.*, 89 S.W.3d at 25. The court strictly scrutinizes termination

3

proceedings and strictly construes involuntary termination statutes in favor of preserving the parental right. *Leal*, 25 S.W.3d at 318. However, it is also essential that the emotional and physical interests of the child not be sacrificed merely to preserve that right. *C.H.*, 89 S.W.3d at 26.

The appellate standard for reviewing factual sufficiency in termination findings is consistent with the clear and convincing standard: we determine whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the State's allegations. *C.H.*, 89 S.W.3d at 25. We should consider whether disputed evidence is such that a reasonable fact-finder could not have resolved that evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). The evidence is factually insufficient if, in light of the entire record, the disputed evidence that cannot be credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction. *Id.*

In this case, the court terminated Karl's parental rights under section 161.001(1)(E) of the family code, which provides for termination if the parent has "engaged in conduct . . . which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(1)(E). The supreme court has held that "endanger" means to expose to loss or injury. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). It is not necessary that the conduct that endangers the child be directed at the child or that the child actually suffers injury. *Id.* Furthermore, "intentional criminal activity which expos[es] the parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well being of the child." *In re A.W.T.*, 61 S.W.3d 87, 89 (Tex. App.—Amarillo 2001, no pet.). Engaging in criminal conduct, while fully realizing that further criminal activity will result in the revocation of parole, is conduct

that endangers the emotional well-being of the child. *See Allred v. Harris County Child Welfare Unit*, 615 S.W.2d 803, 806 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) (father endangered emotional well-being of child when he realized that repeated criminal conduct would revoke parole but nevertheless committed eight robberies).

The evidence in the present case is factually sufficient to support the finding that Karl has engaged in a course of continuing criminal conduct that endangers the physical and emotional well-being of J.H. First, in 1984, Karl murdered his brother and served sixteen years in prison until his release on parole.[2] Then, fully aware that his parole would be revoked if he again engaged in criminal conduct, Karl committed sexual assault and was re-incarcerated. From this evidence, a fact-finder could have reasonably formed a firm belief that Karl's course of criminal conduct endangers his infant son's emotional well-being, if nothing else, by depriving the child of contact with his parent. *See A.W.T.*, 61 S.W.3d at 89; *Allred*, 615 S.W.2d at 806.

Once the trial court finds parental conduct sufficient to warrant termination, the trial court must then determine if termination is in the best interest of the child. *See* Tex. Fam. Code Ann. § 161.001(2). Factors to consider in deciding the best interest of the child include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the parent seeking custody; (5) the programs available to assist the parent seeking custody; (6) the plans for the child by the parent or agency seeking custody; (7) the stability of the home or the proposed

---

[2] The murder sentence was enhanced by a prior conviction for theft in 1975.

placement; (8) any acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Although this list includes the most important considerations, it is not exhaustive; other factors may be considered when appropriate. *Id*. at 372. Likewise, a fact-finder is not required to consider all of the listed factors. *Id*. The analysis of one factor in a given case may be sufficient to support a finding that termination is in the child's best interest, but no single factor is controlling on its face. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.).

First and foremost, the *Holley* test focuses on the best interest of the child, not the best interest of the parent. *Id*. In this case, the child was born after his father was re-incarcerated and had no contact with Karl. No relationship or bond has been formed between the parent and child. However, J.H.'s case worker, Sandra Smith, testified at trial that the child, seven months old at the time, had already formed a strong bond with his foster parents. Smith testified that J.H.'s face lit up when he saw his foster parents and that J.H. preferred them over anyone else in the room. To prevent J.H.'s adoption by his foster parents so that Karl may have visitation rights with the child from prison not only forces the interest of the father upon the child but also conflicts greatly with the child's best interest.

The record in this case contains evidence regarding several other of the *Holley* factors. "[T]he need for permanence is the paramount consideration for the child's present and future physical and emotional needs." *In re M.A.N.M.*, 75 S.W.3d 73, 77 (Tex. App.—San Antonio 2002,

6

no pet.); *see Salas v. Texas Dep't of Protective & Regulatory Servs.*, 71 S.W.3d 783, 792 (Tex. App.—El Paso 2002, no pet.). The government has a compelling interest in establishing a stable, permanent home for a child. *M.A.N.M.*, 75 S.W.3d at 77; *Dupree v. Texas Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 87 (Tex. App.—Dallas 1995, no writ). If Karl were to retain visitation rights, the infant child would have to be taken to prison by someone on a regular basis, yet Karl offered no thoughts or suggestions as to how this might be accomplished. If Karl's parental rights are not terminated, J.H. could remain in foster care for up to fifteen years. Karl testified that he "planned" to be out before then, but considering Karl's past course of conduct, coupled with the uncertainty of the release date, this assurance offers little in the way of permanence for the child's physical and emotional needs. Furthermore, while Karl has no home and testified that he has had no part in raising any of his other children, the child's foster family has expressed a willingness to adopt J.H. and raise him appropriately in a stable home environment. Thus, the Department's plan of termination and adoption would provide J.H. with permanence and stability and better meet his physical and emotional needs.

It is also highly probable that a child will experience emotional distress upon waiting for fifteen years in an impermanent situation while visiting a parent in prison and hoping to be reunited eventually with that parent. Fifteen years would encompass most of J.H.'s remaining childhood. Moreover, a fact-finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re D.L.N.*, 958 S.W.2d 934, 941 (Tex. App.—Waco 1997, pet. denied). Karl's course of criminal conduct over the years indicates a pattern of behavior that is likely to continue to further damage J.H. in the future. Karl's history as a parent

7

reveals that even when he had the opportunity to help parent his other three children and provide financial support he chose not to. Because Karl is incarcerated, the programs available to help him with his parenting skills or criminal propensity are limited. Although Karl is free to participate in any appropriate programs offered by the Texas Department of Criminal Justice, he has not made any efforts to voluntarily access any such services.

Aside from wanting to retain his visitation rights with J.H., Karl lacks a long-term plan for the care of J.H., while the child's current foster family wants to adopt J.H. and raise him in a permanent home environment with a devoted, stay-at-home mother and working father. Karl testified that his parental rights should not be terminated because as the father, he should have visitation rights in order to see who is raising his child and how he is being raised. Karl never expressed any present or future desire to take personal responsibility for J.H.; his testimony and his circumstances suggest that at best he intends to be a distanced overseer.

A reasonable trier of fact could have formed a firm belief or conviction that it is in the child's best interest to terminate Karl's parental rights.[3]

---

[3] We dismiss Karl's contentions that he has not been given the opportunity to comply with any service plan in order to gain custody of the child and that the Department did not adequately consider reunification or placement with relatives as a viable alternative to termination. Section 161.001 does not require the Department to make any efforts to return the child to the parent under these circumstances. *See* Tex. Fam. Code Ann. § 161.001(1)(E) (West 2002). *But see id.* § 161.001(1)(N) (if parent has constructively abandoned child who has been in managing conservatorship of Department for not less than six months, Department must have made reasonable efforts to return child to parent before court may order termination of parent-child relationship). Furthermore, Karl never named any potentially viable placement relatives for J.H. after the mother relinquished her parental rights.

## CONCLUSION

Because we find the evidence factually sufficient to support the trial court's decree of termination, we affirm the trial court's judgment.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed:   July 15, 2004