

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00506-CV

**In the Interest of J.T., J.T., J.T., and J.T., Children**

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-PA-00390
Honorable Peter A. Sakai, Judge Presiding

Opinion by:    Jason Pulliam, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Jason Pulliam, Justice

Delivered and Filed:  December 16, 2015

AFFIRMED

Appellant mother ("Mother") appeals the trial court's judgment terminating her parental

rights to her children, J.T., J.T., J.T., and J.T.[1]  Mother contends the evidence is legally and

factually insufficient to support the trial court's finding that termination of her parental rights is in

the best interests of the children.  The trial court's judgment of termination is affirmed.

### BACKGROUND

On September 6, 2013, the Department of Family and Protective Services ("the

Department") received a referral alleging neglectful supervision against Mother for using illegal

---

[1] To protect the identity of minor children, we refer to the children by their initials and their parents as Mother and Father.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014); TEX. R. APP. P. 9.8(b)(2).  Because all four children have the same initials, if necessary, we will refer to them as J.T.1 through J.T.4.  Although the trial court terminated both parents' parental rights, Mother is the only parent to appeal the trial court's judgment.  Therefore, this court will only discuss the trial court's judgment as it pertains to Mother.

drugs while her children were in her care. The referral alleged that, as part of a housing program to which she belonged, Mother underwent a random drug test on which she tested positive for cocaine. Upon validating the referral, the Department developed a family services plan, and beginning in October 2013, the children resided with their paternal grandmother as part of the Department's family services safety plan. Mother avoided contact with the Department caseworker and did not complete drug treatment, parenting education, or counseling, which were required by the Department's plan.

On February 20, 2014, a Department caseworker made an unannounced visit to the grandmother's home, where the Department caseworker found the four children with Mother, who was nine months' pregnant.[2] Mother submitted to an instant oral drug screen and tested positive for cocaine.

On February 21, 2014, the Department filed a petition to terminate Mother's parental rights. Following an adversary hearing held on March 5, 2014, the trial court signed a temporary order assigning the Department as temporary managing conservator of the children and assigning Mother as temporary possessory conservator with limited access. The children were placed in foster care.

Under the temporary order, the Department developed a new service plan with Mother, which included the goal of reuniting Mother with the four children. The record shows Mother initially followed the service plan, engaged in services, and appeared eager to be reunified with her children. However, in July 2014, Mother reported to the Department caseworker she relapsed by using cocaine. Mother completed an outpatient drug treatment program, and in October 2014, was granted unsupervised visits with all four children. Soon thereafter, the Department approved

---

[2] Mother's fifth child is not a subject of this case.

overnight and unsupervised visits between Mother and the children, with reunification planned for December 2014.

The children visited Mother for a three-day, two-night extended stay over the Thanksgiving holiday in November 2014. Immediately following the visit, Mother tested positive for cocaine. Mother admitted to the Department caseworker she used cocaine because of the stress of having all the children with her for the holiday. The Department offered counseling and treatment, but Mother "almost complete[ly]" disengaged from services. The Department requested Mother submit to an additional drug test, but Mother did not appear for scheduled appointments and only sporadically attended visitations with the children. The last contact the Department caseworker had with Mother was in March 2015.

The trial court held the required status and permanency hearings, and the parties tried the case to the bench before an associate judge on April 28, 2015. Mother was not present at trial, but was represented by court-appointed counsel. The trial court heard testimony from four witnesses: Department supervisor Nancy Clifton; Department caseworker Molly Henry; Department investigator Robert Leos; and the CASA advocate assigned to the case. After receipt of evidence and testimony, the trial court rendered judgment terminating Mother's parental rights as to each child pursuant to Texas Family Code Sections 161.001(1)(D), (N), (O), and (P). The trial court also found termination of Mother's parental rights was in the best interest of the children, pursuant to Texas Family Code Section 161.002(2).

Mother subsequently filed a request for a *de novo* trial. *See* TEX. FAM. CODE ANN. § 201.015 (West Supp. 2015). The district judge conducted a *de novo* trial on July 31, 2015. Mother was present at trial, represented by court-appointed counsel, and testified. Henry and the CASA advocate also testified, and the transcript of the trial before the associate judge was admitted

into evidence. The trial court rendered judgment terminating Mother's parental rights, based upon the following ground:

> "[Mother] used a controlled substance as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the children, and: (i) failed to complete a court-ordered substance abuse treatment program; or (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance."

TEX. FAM. CODE ANN. § 161.001(1)(P) (West 2014). The trial court also found termination of Mother's parental rights was in the best interest of the children, pursuant to Texas Family Code Section 161.001(2). Mother perfected this appeal.

## ANALYSIS

On appeal, Mother contends the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the children's best interest.

### Standard of Review

To support termination of parental rights under Family Code Section 161.001, the Department must establish by clear and convincing evidence one or more of the acts or omissions enumerated under subsection (1), **and** termination is in the best interest of the child. TEX. FAM. CODE ANN. §§ 161.001(1), (2); TEX. FAM. CODE § 161.206(a) (West Supp. 2014); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Both elements must be established, and termination may not be based solely on the best interest of the child. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

A parent's right to the companionship, care, custody, and management of children is a constitutional interest "far more precious than any property right." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see In re J.F.C.*, 96 S.W.3d at 273. Consequently, termination proceedings must be strictly scrutinized, and "involuntary termination statutes are strictly construed in favor of the parent." *Holick*, 685 S.W.2d at 20. Because termination "is complete, final, irrevocable, and

divests for all time that natural right … the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights." *Id*.; *see In re J.F.C.*, 96 S.W.3d at 264-66. Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d at 265-66. An appellate court must not reweigh issues of witness credibility but "'must defer to the [factfinder's] determinations so long as those determinations are not themselves unreasonable.'" *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)).

Under the strict scrutiny implicit in termination cases and the necessity of clear and convincing evidence, the traditional legal and factual sufficiency standards of review are inadequate. *In re J.F.C.*, 96 S.W.3d at 264-66. Instead, in conducting a legal sufficiency review in a termination-of-parental-rights case, an appellate court must view all of the evidence in the light most favorable to the finding and determine whether a reasonable factfinder could have formed a firm belief or conviction that its ultimate findings are true. *See id*. at 266. In viewing the evidence in the light most favorable to the judgment, the appellate court "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and "should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id*. If, after conducting its legal sufficiency review of all the evidence, a court determines no reasonable factfinder could form a firm belief or conviction consistent with the final judgment, then the court must conclude the evidence is legally insufficient. *Id*. at 264-66.

In conducting a factual sufficiency review in a parental-rights termination case, the appellate court must review and consider the entire record, including evidence contrary to the judgment, and determine whether the disputed evidence is such that a reasonable fact finder could

have formed a firm conviction or belief about the truth of the Department's allegations. *Id.* The appellate court assumes the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregards all evidence that a reasonable factfinder could have disbelieved. *Id.* In reviewing factual sufficiency, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.*

### Best Interest of the Children

When considering the best interest of the child, the court recognizes the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, the court also presumes that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2014). In determining the best interest of the child, the court may consider the following factors: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

"The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered

the safety of the child." *Id.* In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dept. of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re B.K.D.*, 131 S.W.3d 10, 17 (Tex. App.—Fort Worth 2004, pet. denied).

Turning to the evidence regarding the best interest of the children, we consider the *Holley* factors as outlined above.

### *Desires of the Children*

With regard to the first factor, the children's desires, the evidence weighs in favor of the trial court's finding. At the time of the *de novo* trial, the children were five, four, three, and two years' old, respectively. The two younger children were not able to verbally communicate their desires. However, when a child is too young to express its desires, the factfinder may consider whether the child has bonded with its current caregiver, is well-cared for, and whether the child has spent minimal time with the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The record shows the four children had not been in Mother's custody since March 2014. Henry testified all four children were currently placed together in a "foster/adopt" home that would lead to permanency. According to Henry, the two older children expressed to her they wanted to stay with their foster parents. Henry also testified the two younger children were not quite as verbal, but were both very happy in their current placement. According to Henry, all four children were well-cared for and had bonded with their foster family. Henry further testified the children's excitement regarding their Mother's visits waned considerably as Mother was allowed longer and unsupervised visits. According to Henry, by the time of trial, the children stopped asking about Mother.

*Emotional and Physical Needs/Stability of the Home*

A child's need for permanence is a paramount consideration for the child's present and future physical and emotional needs. *See Dupree*, 907 S.W.2d at 87. The goal of establishing a stable permanent home for a child is a compelling government interest. *In re M.A.N.M.*, 75 S.W.3d 73, 77 (Tex. App.—San Antonio 2002, no pet.). A factfinder may infer from a parent's past inability or unwillingness to meet a child's physical and emotion needs an inability or unwillingness to meet a child's needs in the future. *In re J.D.*, 436 S.W.3d at 118.

Because of the children's ages, J.T.1 and J.T.2 were the only children able to undergo mental health assessments following their removal from Mother's custody. J.T.3 and J.T.4 were too young for formal evaluation. The record shows J.T.1 was diagnosed with adjustment disorder, oppositional defiant disorder, and post-traumatic stress disorder. J.T.2 was diagnosed with adjustment disorder. The treatment recommendation for both children was individual therapy and a stable and consistent home environment.

Mother testified she secured an apartment for her family the day before the *de novo* trial, and Mother testified she lived at the Haven for Hope shelter for approximately six months prior to moving into the new apartment. The record shows that between November 2014 and February 2015, Mother was forced to leave the housing program of which she was a participant as a result of testing positive for cocaine use; was evicted from another apartment; stayed with relatives briefly; and then stayed at the Salvation Army shelter prior to her stay at the Haven for Hope shelter.

The trial court could reasonably infer from Mother's past inability to maintain a stable and consistent home that Mother would not be able to provide a stable home for the children in the future. The trial court could further infer from the evidence that if the children returned to Mother's

custody, they would face an uncertain and unstable life, thus jeopardizing their emotional and physical well-being.

### *Emotional and Physical Danger*

"As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied). A trial court may examine the parent's history with other children when considering the risks or threats of a parent's environment. *In re E.A.F.*, 424 S.W.3d 742, 751 (Tex. App.—Houston [14th Dist.] 2014, pet. denied.).

At the time of the *de novo* trial, Mother was twenty-two years' old, and reported having a drug abuse problem from the age of twelve. The instant case began when Mother was referred to the Department for using cocaine while the four children were in her custody. Four months later, Mother tested positive for cocaine use via a hair follicle test. While working to complete her service plan, which included attending a drug abuse treatment program, Mother relapsed twice. The final relapse occurred when all four children were scheduled to be with Mother for an extended, unsupervised overnight visit. Additionally, Mother admitted to using cocaine while pregnant with her fifth child, but testified she did not use drugs while pregnant with any of the four children who are the subjects of this case.

Mother testified she completed a drug treatment program shortly before the *de novo* hearing and also testified she would not use illegal drugs if reunited with her children. However, Mother could not explain what, if anything, had changed in her life that would allow her to remain clean and sober, maintain employment, and provide a stable home environment.

The trial court could also reasonably infer from Mother's past and recent conduct, as well as Mother's continued illegal drug use, that the children's physical and emotional well-being would be in danger if they were to return to Mother's custody.

*Parental Abilities*

With regard to the fourth factor, the evidence weighs in favor of the trial court's finding. Mother testified her goal was to go back to school and find a good job so she could do "everything" for her children. The record shows all four children were generally healthy, but Clifton testified the children had poor hygiene and dirty diapers at the time of their removal. Following removal, Mother completed parenting education as required by her service plan, however, when the Department's reunification plan progressed to the point where Mother was allowed unsupervised, overnight visits with the children, Mother relapsed and admitted using cocaine because of stress.

During the *de novo* trial, Mother explained relapses are a common part of the recovery process. Mother could not explain, however, how she would avoid future relapses caused by the stress of having the children with her on a full-time basis.

*Plans for the Children*

With regard to the final factor, the evidence is neutral. Mother testified she planned to go back to school, obtain a job, and provide a home for her children. While Mother obtained permanent housing for her family, Mother admitted she had been in the new apartment for just one day. On the other hand, Henry testified all four children were currently in a "foster/adopt" placement together with foster parents who intended to adopt all four siblings.

## Conclusion

After determination and weight of the *Holley* factors and viewing the evidence in the light most favorable to the finding, this court concludes the trial court could reasonably have formed a firm conviction that termination of Mother's parental rights is in the children's best interest. Thus, the evidence is legally sufficient to support this finding. Based upon the same evidence and conclusions, the evidence is also factually sufficient to support the trial court's finding that termination was in the children's best interest.

## CONCLUSION

Based on the foregoing reasons, we overrule Mother's sole issue on appeal in which she challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of the children. We affirm the trial court's judgment as to Mother. No costs shall be assessed against Mother in relation to this appeal because she qualifies as indigent.

Jason Pulliam, Justice