

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00567-CV

**IN THE INTEREST OF L.J.T.**, a Child

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2016PA01890
Honorable Charles E. Montemayor, Judge Presiding[1]

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  February 28, 2018

AFFIRMED

This is an accelerated appeal of the trial court's order terminating Appellant Dad's parental

rights to his child, L.J.T.  In his appeal, Dad contends the evidence is neither legally nor factually

sufficient for the trial court to have found by clear and convincing evidence that terminating Dad's

parental rights was in L.J.T.'s best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b)(2) (West

Supp. 2017).  Because we conclude the evidence is legally and factually sufficient to support the

trial court's finding, we affirm the trial court's order terminating Dad's parental rights to L.J.T.

---

[1] This proceeding arises out of Cause No. 2016-PA-01890, styled *In the Interest of L.J.T., a Child*, pending in the 224th Judicial District Court, Bexar County, Texas, the Honorable Cathy Stryker presiding.  The termination order in this matter was signed by Associate Judge, the Honorable Charles E. Montemayor.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 22, 2016, the Texas Department of Family and Protective Services received a referral concerning infant L.J.T., who was born with chronic lung disease, pulmonary hypertension, and feeding issues. The referral alleged that hospital staff worked with Mom for three months, but she was unable to care for and meet L.J.T.'s special medical needs. Among other things, L.J.T. required feeding through a gastrointestinal tube (G-tube) and an oxygen tank. At that time, Dad was incarcerated at the Bexar County Jail for an alleged assault on Mom.

On August 29, 2016, the Department filed its Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship. Following an emergency order, the Department was named temporary managing conservator of L.J.T. The trial court ordered both parents to comply with each of the requirements set out in the Department's service plan.

After one year, and several permanency hearings, the case was called for trial on August 25, 2017. Following a hearing, the trial court terminated Dad's parental rights pursuant to Texas Family Code sections 161.001(b)(1)(D), (E), (N), (O), and (Q).[2] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (Q).[3] The trial court made further findings that termination of

---

[2] Because Mom filed a relinquishment of her parental rights and is not a party to this appeal, we limit our discussion to evidence and testimony relevant to the trial court's termination of Dad's parental rights.

[3] The pertinent sections of Texas Family Code section 161.001(b)(1) are set forth below:

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
   (i) the department has made reasonable efforts to return the child to the parent;
   (ii) the parent has not regularly visited or maintained significant contact with the child; and
   (iii) the parent has demonstrated an inability to provide the child with a safe environment;

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary

Dad's parental rights was in L.J.T.'s best interest pursuant to section 161.001(b)(2). *See id.* § 161.001(b)(2). The trial court named the Department as L.J.T.'s permanent managing conservator.

In his sole issue on appeal, Dad contends the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in L.J.T.'s best interest.

### STANDARDS OF REVIEW

"Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi 2010, no pet.) (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent. *Id.* (citing *In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.— Corpus Christi 2006, no pet.)).

An order terminating parental rights must be supported by clear and convincing evidence that (1) the parent has committed one of the grounds for involuntary termination as listed in section 161.001(b)(1) of the Family Code, and (2) terminating the parent's rights is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the

---

managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; [and]

(Q) knowingly engaged in criminal conduct that has resulted in the parent's:
(i) conviction of an offense; and
(ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition.

TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), and (Q).

mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *J.F.C.*, 96 S.W.3d at 264.

"There is a strong presumption that the best interest of the child is served by keeping the child with [her] natural parent, and the burden is on [the Department] to rebut that presumption." *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "The same evidence of acts or omissions used to establish grounds for termination under section 161.001[(b)](1) may be probative in determining the best interest of the child." *Id.*

## A.    Legal Sufficiency

When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *J.F.C.*, 96 S.W.3d at 266). If the court "determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally [sufficient]." *See id.* (quoting *J.F.C.*, 96 S.W.3d at 266). This court must assume "the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *J.F.C.*, 96 S.W.3d at 266.

## B.    Factual Sufficiency

Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *accord In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96

S.W.3d at 266; *accord C.H.*, 89 S.W.3d at 25. "If, in light of the entire record, [unless] the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, . . . the evidence is factually [sufficient]." *J.F.C.*, 96 S.W.3d at 266.

**TERMINATION HEARING**

We limit our rendition of the facts to those pertaining to the trial court's determination of whether termination of Dad's parental rights was in L.J.T.'s best interest.

**A.     Testimony Elicited during the Termination Hearing**

*1.     Denise Santos*

Denise Santos, a legal caseworker for the Department, testified that at the time of the hearing, L.J.T. was one-year-old. She was born with cocaine in her system and with relatively severe special medical needs. The hospital allowed Mom to room with L.J.T. so that Mom could be educated on the child's needs. After three months, however, Mom was unable to demonstrate the ability to care for L.J.T. and the child was taken into the Department's care pursuant to emergency orders.

Santos further testified she had been in contact with Dad since the beginning of the case, and that Dad was provided with a service plan. Dad was imprisoned sporadically throughout the entire proceedings. He was incarcerated for assault, released, and then rearrested for a violation of his parole.

Although Dad reported that he completed substance abuse, domestic violence, parenting, and anger management classes during his incarceration, Santos testified that Dad did not provide any certificates of completion. She further relayed that Dad had not demonstrated an ability to provide a safe, stable environment for L.J.T. and that she had not seen any positive improvement or attempts by Dad to abide by the rules prescribed by the court.

Santos opined that she believed termination of Dad's parental rights is in L.J.T.'s best interest because Dad

> has not demonstrated the ability to address all of the issues as to why the child came into care. He has not demonstrated that he can provide safe and stable housing for his child, a drug-free environment, a domestic violence free environment, or that he can meet any of her special needs, and he's also currently incarcerated.

As for future plans, Santos testified the foster parents were willing to adopt L.J.T.; and, both the maternal grandmother and a paternal aunt were also being reviewed for possible placement should parental rights be terminated.

Finally, Santos testified that L.J.T. is growing; she is more alert and receiving occupational, physical, and speech therapy. The doctors are working toward the proper healing of her G-tube and she is slowly gaining strength and becoming more mobile.

### 2. *Dad*

During his testimony, Dad admitted several arrests for assault and two arrests for possession of marijuana; he was adamant, however, that his current incarceration was a mistake. Dad testified that he took a class while he was incarcerated, four hours-per-day, for forty-five days, for domestic violence, parenting, and anger management. He testified that he did not receive a certificate. Dad claims he completed the class before he left, but when he asked for the certificate, the teacher was sick and no one could provide him with a copy of the certificate. Dad also testified that he completed substance abuse treatment during his incarceration.

Dad acknowledged he has never seen L.J.T. and knew little about her special needs. Although he was adamant that he could care for L.J.T., Dad did not know what a G-tube was or how to care for a child with a G-tube.

**B.    Trial Court's Pronouncement**

After the completion of testimony and arguments of counsel, the trial court orally dictated the procedural background, specifically indicating Dad's presence and his representation by counsel.  The trial court explained the proceedings began on August 29, 2016, and on that day, Dad was appointed counsel.  The first hearing was held on September 9, 2016; Dad was present and represented by counsel.

In terminating Dad's parental rights, based on statutory grounds under subsections 161.001(b)(1)(D), (E), (N), (O), and (Q), and making a finding that termination of Dad's parental rights was in L.J.T.'s best interest, the trial court explained as follows:

> [L.J.T. is] one year's old.  Her life has been spent in foster care.  And the criminal conduct of the parents has continued throughout.  As a result, we have one incarcerated today and one in a halfway house today.  Those are facts and those just can't be ignored.
>
> . . . .
>
> As to [Dad], the Grounds are: D and E.  D, it was my understanding there was drug use, and this child was even born with a positive meconium.  So [Dad] allowed the child to be born while the mother ingested illegal controlled substances. E, we heard testimony of a continued pattern of criminal conduct.  As a matter of fact, . . . the father is in jail even today [and] for the majority of this case.  N, the ground doesn't say anything about abandonment.  It's called constructive abandonment pursuant to the Code.  It says, constructively abandoned means the Department made reasonable efforts to return the child.  The Department made a plan, the Department appointed attorneys, the Department conducted its review hearings.  Those were the reasonable efforts.
>
> Second, that the parent has not [regularly] visited or maintained significant contact with the child.  This parent has not even met this child.
>
> And, three, that the parent has demonstrated an inability to provide the child with a safe environment.  Obviously, throughout this case, he's been incarcerated and [unable] to provide a safe environment.  So those elements have been made for N.
>
> To the O Ground, again the plan was discussed at the 60-Day as required by law, and relied on the attorney's diligence to maintain the service plan and make sure it was filed, make sure that the parties understood what was expected of them

with the admonishments given that if they don't do the plan, it's possible their rights could be restricted or terminated.

Q Ground, I understand about the fact is that there's a sentence of three years. Anything regarding the potential monitoring or potential post-considerations is purely speculative. The fact today there's a sentence of three years that the father is serving.

BASIS FOR TRIAL COURT'S TERMINATION

A.     **Statutory Violations under the Texas Family Code**

The trial court found, by clear and convincing evidence, that Dad allowed L.J.T. to remain in conditions or surroundings that endangered her physical or emotional well-being; placed her with individuals who engaged in conduct which endangered her physical or emotional well-being; constructively abandoned L.J.T.; failed to comply with the provision of the court-ordered service plan; engaged in criminal conduct that resulted in his conviction of an offense and confinement and inability to care for L.J.T.; and that such acts or omissions were grounds for termination under subparagraph (D), (E), (N), (O), and (Q) of section 161.001(b)(1).  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (Q).  On appeal, Dad does not challenge the trial court's statutory grounds findings.

B.     **Best Interest of the Child**

*1.     Arguments of the Parties*

Dad contends the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in L.J.T.'s best interest.  *See id.* § 161.001(b)(2).

The State counters that Dad had a long criminal history and was incarcerated for felony assault of a family member.  Additionally, L.J.T. required special care that Dad was not prepared to provide.

> ### 2. *The* Holley *Factors and Texas Family Code section 263.307(b)*

Some factors used to ascertain the best interest of the child were set forth in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

> (1)   the child's desires;
>
> (2)   the child's emotional and physical needs now and in the future;
>
> (3)   any emotional and physical danger to the child now and in the future;
>
> (4)   the parental abilities of the individuals seeking custody;
>
> (5)   the programs available to assist the individuals seeking custody to promote the best interest of the child;
>
> (6)   the plans for the child by the individuals or agency seeking custody;
>
> (7)   the stability of the home or proposed placement;
>
> (8)   the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and
>
> (9)   any excuse for the parent's acts or omissions.

*In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).

The *Holley* Court warned that "[t]his listing is by no means exhaustive, but does indicate a number of considerations which either have been or would appear to be pertinent." *Holley*, 544 S.W.2d at 372; *accord E.N.C.*, 384 S.W.3d at 807 (describing the *Holley* factors as nonexclusive). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *C.H.*, 89 S.W.3d at 27. In fact, evidence of only one factor may be sufficient for a factfinder to reasonably form a firm belief or conviction that termination is in a child's best interest—especially when undisputed evidence shows that the parental relationship endangered the child's safety. *See id*.

In addition to consideration of the *Holley* factors, courts remain mindful that "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best

interest." TEX. FAM. CODE ANN. § 263.307(a) (West Supp. 2017); *In re B.R.*, 456 S.W.3d 612, 615 (Tex. App.—San Antonio 2015, no pet.). There is also a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). In determining whether a parent is willing and able to provide the child with a safe environment, courts should consider the following statutory factors set out in section 263.307(b) of the Code, which include the following:

(1) the child's ages and physical and mental vulnerabilities;

(2) the frequency and nature of out-of-home placements;

(3) the magnitude, frequency, and circumstances of the harm to the child;

(4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5) whether the child is fearful of living in or returning to the child's home;

(6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parent, other family members, or others who have access to the child's home;

(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills; . . . and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *accord In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *4 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.) (citing *In re A.S.*, No.

04-14-00505-CV, 2014 WL 5839256, at *2 (Tex. App.—San Antonio Nov. 12, 2014, pet. denied) (mem. op.)); *B.R.*, 456 S.W.3d at 616.

When determining the best interests of the child, a court "may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *B.R.*, 456 S.W.3d at 616 (citing *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied)). A factfinder may also measure a parent's future conduct by his or her past conduct to aid in determining whether termination of the parent-child relationship is in the best interests of the child. *Id.* Finally, the grounds on which the trial court granted termination, pursuant to section 161.001 of the Code, "may also be probative in determining the child's best interest; but the mere fact that an act or omission occurred in the past does not *ipso facto* prove that termination is *currently* in the child's best interest." *In re O.N.H.*, 401 S.W.3d 681, 684 (Tex. App.—San Antonio 2013, no pet.) (citation omitted).

Applying each standard of review, we examine the evidence pertaining to the best interest of L.J.T. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *E.N.C.*, 384 S.W.3d at 807; *J.F.C.*, 96 S.W.3d at 264. We remain mindful that the trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witnesses. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (requiring appellate deference to the factfinder's findings); *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

### a. Age, Vulnerabilities, and Desires of the Child

L.J.T. was only one-year-old at the time of the hearing and did not testify. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (child's age and physical and mental vulnerabilities); *Holley*, 544 S.W.2d at 371–72. As stated by the Fourteenth Court of Appeals, "[w]hen children are too young to express their desires, the fact finder may consider that the children have bonded with the foster

family, are well-cared for by them, and have spent minimal time with a parent." *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

We further note, L.J.T. was born with medical needs requiring special care. Dad admitted he had never met L.J.T. and his testimony during the hearing showed he lacked an understanding of L.J.T.'s medical needs. *In re L.M.M.*, 522 S.W.3d 34, 47 (Tex. App.—Houston [1st Dist.] 2017, pet. filed) (finding best interest to terminate based in part on parent's inability to meet medical needs). The record is clear that L.J.T. requires special needs regarding her feeding and lungs, and the need for continued occupational, physical, and speech therapy. She is thriving and doing well in her current placement and the foster parents have indicated a willingness to adopt L.J.T. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (13); *Holley*, 544 S.W.2d at 371–72; *see also In re J.I.M.*, 517 S.W.3d 277, 286–87 (Tex. App.—San Antonio 2017, pet. denied) (finding best interest to terminate based in part on child's condition improving in foster home); *C.H.*, 89 S.W.3d at 28 (holding placement plans and adoption evidence are relevant to best interest determination).

b.  <u>Emotional and Physical Needs of the Child Now and in the Future, Emotional and Physical Danger to the Child Now and in the Future, and Willingness to Accept Services and Effect Positive Change</u>

"The need for permanence is the paramount consideration for the child's present and future physical and emotional needs." *Dupree v. Tex. Dep't of Protective and Regulatory Servs.*, 907 S.W.2d 81, 87 (Tex. App.—Dallas 1995, no writ). This court considers a parent's conduct before and after the Department's removal of the child. *See In re S.M.L.D.*, 150 S.W.3d 754, 758 (Tex. App.—Amarillo 2004, no pet.). A parent's criminal background is particularly relevant if it demonstrates a tendency towards violence, especially violence against family members. *See D.N. v. Tex. Dep't of Family & Protective Servs.*, No. 03–15–00658–CV, 2016 WL 1407808, at \*2 (Tex. App.—Austin Apr. 8, 2016, no pet.) (mem. op.) ("[D]omestic violence may constitute endangerment, even if the violence is not directed at the child."). Additionally, L.J.T.'s young age

and medical frailty renders her vulnerable if left in the custody of a parent who is unable or unwilling to protect her or attend to her needs. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (2); *Holley*, 544 S.W.2d at 371–72; *In re J.G.M.*, No. 04-15-00423-CV, 2015 WL 6163204, at \*3 (Tex. App.—San Antonio Oct. 21, 2015, no pet.) (mem. op.).

Dad was incarcerated throughout the pendency of this case. *See In re C.P.V.Y.*, 315 S.W.3d 260, 267–69 (Tex. App.—Beaumont 2010, no pet.) (finding best interest to terminate based in part on father's incarceration). His incarceration was not only a barrier to Dad creating a bond with L.J.T., but also prevented Dad from learning how to care for L.J.T.'s special needs, both physically and emotionally. *See Holley*, 544 S.W.2d at 371–72; TEX. FAM. CODE ANN. § 263.307(b)(1) & (12).

Although a parent's incarceration standing alone will not support an order of termination, it is a factor the trial court may consider when determining whether a parent engages in conduct that endangers a child's physical or emotional well-being. *See In re M.C.*, 482 S.W.3d 675, 685 (Tex. App.—Texarkana 2016, pet. denied) ("[W]hile we recognize that imprisonment, standing alone, is not conduct which endangers the physical or emotional well-being of the child, intentional criminal activity which expose[s] the parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of the child.") (second alteration in original) (quotation marks omitted); *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.) ("Evidence of criminal conduct, convictions, and imprisonment and its effect on a parent's life and ability to parent may establish an endangering course of conduct."). Texas courts have repeatedly recognized that a parent's tendency towards violence, especially against family members, is relevant to the trial court's best interest determination. *See D.N.*, 2016 WL 1407808, at \*2; *In re A.A.*, No. 06–14–00060–CV, 2014 WL 5421027, at \*3 (Tex. App.—

Texarkana Oct. 23, 2014, no pet.) (mem. op.) ("Domestic violence, want of self-control, and the propensity for violence may be considered as evidence of endangerment.").

We note that Dad's current incarceration stems from his second conviction for assaulting L.J.T.'s mother. Dad admitted to several arrests for assault against Mom and two arrests for possession of marijuana. *See Holley*, 544 S.W.2d at 371–72; TEX. FAM. CODE ANN. § 263.307(b)(7), (8). As the trial court noted, L.J.T. was born with cocaine in her system. Although Dad was not present at the time she was born, by reason of his own criminal conduct, he was unable to intervene in Mom's drug use to protect his unborn child. Additionally, when L.J.T. was hospitalized for the first three months of her life, and Mom was unable to provide the necessary care, Dad was incarcerated and unable to assist or provide for L.J.T.'s needs.

Based on the testimony presented during the hearing, the trial court could have formed a firm belief or conviction that Mom's living conditions and surroundings while pregnant with L.J.T. endangered L.J.T.'s physical and emotional well-being before the Department became involved and that Dad's own conduct made him either unable or unwilling to protect L.J.T. or attend to her needs now or in the future. *See* TEX. FAM. CODE ANN. § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72; *J.G.M.*, 2015 WL 6163204, at *3.

> d.  Stability of the Home or Proposed Placement

"The goal of establishing a stable, permanent home for a child is a compelling interest of the government." *Dupree*, 907 S.W.2d at 87. Dad was incarcerated at the time of the hearing. The record is silent regarding any plans Dad had with respect to caring for L.J.T. or how Dad would support himself or if he had a support system waiting for him when he was released. *See* TEX. FAM. CODE ANN. § 263.307(b)(13) (whether adequate social system available); *Holley*, 544 S.W.2d at 371–72. On the other hand, the evidence shows L.J.T.'s needs are being met by the foster parents and she is thriving in their care. The parties stipulated the foster parents were

interested in adopting L.J.T. if the parental rights were terminated and the Department was also looking into placement with the maternal-grandmother and paternal aunt. *See* TEX. FAM. CODE ANN. § 263.307(b)(13); *Holley*, 544 S.W.2d at 371–72; *see also In re M.A.N.M.*, 75 S.W.3d 73, 77 (Tex. App.—San Antonio 2002, no pet.) (reiterating goal of establishing a stable and permanent home for a child as a compelling government interest).

**C.      Trial Court's Determination that Termination of Dad's Parental Rights Was in the Child's Best Interest**

The trial court's conclusions regarding Dad's termination under section 161.001(b)(1) are, in fact, probative in determining L.J.T.'s best interest. *See C.H.*, 89 S.W.3d at 28 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest); *O.N.H.*, 401 S.W.3d at 684.

The trial court heard from witnesses, including Dad. In making its determination, the trial court must determine the child's best interest; above all, the court must consider the child's placement in a safe environment. *See* TEX. FAM. CODE ANN. § 263.307(a); *B.R.*, 456 S.W.3d at 615.

Reviewing the evidence under the two sufficiency standards, and giving due consideration to evidence that the trial court could have reasonably found to be clear and convincing, we conclude the trial court could have formed a firm belief or conviction that terminating Dad's parental rights to L.J.T. was in L.J.T.'s best interest. *See J.L.*, 163 S.W.3d at 85; *J.F.C.*, 96 S.W.3d at 266; *see also H.R.M.*, 209 S.W.3d at 108. Therefore, the evidence is legally and factually sufficient to support the trial court's order terminating Dad's parental rights. *See J.F.C.*, 96 S.W.3d at 266; *see also H.R.M.*, 209 S.W.3d at 108.

**CONCLUSION**

The trial court found Dad committed multiple statutory grounds supporting termination of his parental rights, *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (Q), and that termination of his parental rights was in L.J.T.'s best interest, *see id.* § 161.001(b)(2).

Based on a review of the entire record, we conclude the evidence is legally and factually sufficient to support the trial court's finding, by clear and convincing evidence, that termination of Dad's parental rights to L.J.T. is in L.J.T.'s best interest. *See id.*

Accordingly, we overrule Dad's appellate issue regarding the trial court's termination of his parental rights.

Patricia O. Alvarez, Justice