

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00681-CV

**IN THE INTEREST OF A.J.M.**, a Child

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2015PA02126
Honorable Charles E. Montemayor, Judge Presiding[1]

Opinion by: Patricia O. Alvarez, Justice

Sitting: Marialyn Barnard, Justice
Patricia O. Alvarez, Justice
Irene Rios, Justice

Delivered and Filed: March 28, 2018

AFFIRMED

This is an accelerated appeal of the trial court's order terminating Appellant Dad's parental

rights to his child, A.J.M.[2] In his appeal, Dad contends the evidence is neither legally nor factually

sufficient for the trial court to have found by clear and convincing evidence that terminating Dad's

parental rights was in A.J.M.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2) (West

Supp. 2017). Because we conclude the evidence is legally and factually sufficient to support the

trial court's finding, we affirm the trial court's order terminating Dad's parental rights to A.J.M.

---

[1] The Honorable Karen H. Pozza is the presiding judge of the 407th Judicial District Court. The order terminating Appellant Dad's parental rights was signed by the Honorable Charles E. Montemayor, Associate Judge.

[2] The termination order signed by the court terminates the parent-child relationship between Dad and the child identified as A.J.M., born March 21, 2014, and does not affect any parent-child relationship, if any such relationship exists, between Dad and the child identified as A.J.M., born March 2, 2015. Accordingly, our opinion is limited to the termination of the parent-child relationship between Dad and the child identified as A.J.M., born March 21, 2014.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 11, 2015, the Texas Department of Family and Protective Services received a referral alleging Mom, A.J.M., and Mom's seven-month-old son had been homeless, but were currently living with relatives. The house was unsanitary and insect infested; dog feces, needles, and trash covered the floors. A loaded firearm was located in the couch cushions and the residents were reportedly using methamphetamines, cocaine, and marijuana in front of the children.

On October 9, 2015, the Department filed its Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship. Following an emergency order, the Department was named temporary managing conservator of A.J.M.

The case was originally called for trial on March 21, 2017. It was reset to June 2, 2017, and finally to September 28, 2017. After considering the testimony and arguments of counsel, the trial court orally pronounced the termination of Dad's parental rights pursuant to Texas Family Code section 161.001(b)(1)(N) and (Q), *see* TEX. FAM. CODE ANN. § 161.001(b)(1) (N), (Q),[3] and made further findings that termination of Dad's parental rights was in A.J.M.'s best interest pursuant to section 161.001(b)(2), *see id.* § 161.001(b)(2). The trial court also made a finding that

---

[3] The pertinent portion of Texas Family Code section 161.001(b)(1) provides as follows:

> (N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
>   (i) the department has made reasonable efforts to return the child to the parent;
>   (ii) the parent has not regularly visited or maintained significant contact with the child; and
>   (iii) the parent has demonstrated an inability to provide the child with a safe environment; [and]
>
>   . . .
>
> (Q) knowingly engaged in criminal conduct that has resulted in the parent's:
>   (i) conviction of an offense; and
>
>   (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition;

TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (Q).

Dad failed to legitimize paternity pursuant to section 161.002. *See id*. § 161.002. The trial court named the Department as A.J.M.'s permanent managing conservator.

The written termination order, however, signed on September 28, 2017, provides the statutory basis for termination of Dad's parental rights was only pursuant to Texas Family Code sections 161.001(b)(1)(N) and (Q), *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(N) and (Q). "When there is an inconsistency between a written judgment and an oral pronouncement of judgment, the written judgment controls." *In re L.G.R.*, 498 S.W.3d 195, 206 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Thus, for purposes of statutory violations under chapter 161, this court is limited to considering the trial court's finding on Dad's constructive abandonment and knowingly engaging in criminal conduct resulting in imprisonment reflecting or indicating an inability to care for A.J.M., *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (Q), and not the trial court's oral pronouncement regarding Dad's failure to legitimate, *see id*. § 161.002.

In his sole issue on appeal, Dad contends the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in A.J.M.'s best interest.

### STANDARDS OF REVIEW

"Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi 2010, no pet.) (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent. *Id*. (citing *In re D.S.P.*, 210 S.W.3d 776, 778 (Tex. App.—Corpus Christi 2006, no pet.)).

An order terminating parental rights must be supported by clear and convincing evidence that (1) the parent has committed one of the grounds for involuntary termination as listed in section

161.001(b)(1) of the Family Code, and (2) terminating the parent's rights is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *J.F.C.*, 96 S.W.3d at 264.

"There is a strong presumption that the best interest of the child is served by keeping the child with [his] natural parent, and the burden is on [the Department] to rebut that presumption." *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "The same evidence of acts or omissions used to establish grounds for termination under section 161.001[(b)](1) may be probative in determining the best interest of the child." *Id.*

## A.    Legal Sufficiency

When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *J.F.C.*, 96 S.W.3d at 266). If the court "determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally [sufficient]." *See id.* (quoting *J.F.C.*, 96 S.W.3d at 266). This court must assume "the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *J.F.C.*, 96 S.W.3d at 266.

## B.    Factual Sufficiency

Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*,

89 S.W.3d 17, 25 (Tex. 2002); *accord In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266; *accord C.H.*, 89 S.W.3d at 25. "If, in light of the entire record, [unless] the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, . . . the evidence is factually [sufficient]." *J.F.C.*, 96 S.W.3d at 266.

### TESTIMONY ELICITED DURING THE TERMINATION HEARING

Because only Dad appeals the termination of his parental rights, we limit our recitation of the facts accordingly.

On March 21, 2017, the trial court called the case for a final hearing. Dad's attorney announced not ready and explained that, although he arranged for his client to participate by phone from prison, Dad did not want to participate. The court clerk confirmed as follows:

> I contacted the law library and I was informed that they did secure the prisoner, but when they brought him out, he requested that he did not want to participate in the hearing at all, so they took him back.

The matter was then reset to June 2, 2017. The caseworker reported the children were doing well in the foster home. They were gaining weight, attending therapy, and thriving. Dad's attorney explained Dad's criminal conviction was on appeal and they were expecting a decision "in the near future."

The final day of the hearing was September 28, 2017. At the beginning of the hearing, Mom signed a relinquishment of her parental rights and presented the affidavit to the trial court.

The only witnesses called to testify was the Department's caseworker, Amy Martinez. Martinez testified that A.J.M. was three-and-a-half-years-old at the time of the hearing. Dad had been incarcerated throughout the pendency of the entire case for human-trafficking. He was

serving a twenty-eight-year sentence with an expected release date in 2029. Martinez's only contact with Dad was through written correspondence. The father had not worked any services, provided any certificates, or visited with the child.

Martinez believes terminating Dad's parental rights is in A.J.M.'s best interest. Dad could not provide a safe and stable home for him. The foster family, with whom A.J.M. was living, was providing a safe home and was willing to adopt him. By the time Dad is released from prison, A.J.M. would be almost eighteen-years-old.

BASIS FOR TRIAL COURT'S TERMINATION

**A.      Statutory Violations under the Texas Family Code**

The trial court found, by clear and convincing evidence, that Dad failed to comply with the provision of the court-ordered service plan and that such acts or omissions were grounds for termination under subparagraph (N) and (Q) of section 161.001(b)(1). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (Q). On appeal, Dad does not challenge the trial court's statutory grounds findings.

**B.      Best Interest of the Child**

*1.      Arguments of the Parties*

Dad contends the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in A.J.M.'s best interest. *See id.* § 161.001(b)(2).

The State counters that Dad is serving a twenty-eight year prison sentence for human trafficking and has been incarcerated for most of A.J.M.'s life. Dad's criminal conduct proves his inability to provide for A.J.M., his failure to develop a relationship with A.J.M. and his unwillingness to put A.J.M.'s best interest before his own self-destructive choices. The evidence was thus legally and factually sufficient to support the trial court's best interest finding.

*2.* *The* Holley *Factors and Texas Family Code section 263.307(b)*

Some factors used to ascertain the best interest of the child were set forth in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

(1)    the child's desires;

(2)    the child's emotional and physical needs now and in the future;

(3)    any emotional and physical danger to the child now and in the future;

(4)    the parental abilities of the individuals seeking custody;

(5)    the programs available to assist the individuals seeking custody to promote the best interest of the child;

(6)    the plans for the child by the individuals or agency seeking custody;

(7)    the stability of the home or proposed placement;

(8)    the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and

(9)    any excuse for the parent's acts or omissions.

*See also In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).

The *Holley* Court warned that "[t]his listing is by no means exhaustive, but does indicate a number of considerations which either have been or would appear to be pertinent." *Holley*, 544 S.W.2d at 372; *accord E.N.C.*, 389 S.W.3d at 807 (describing the *Holley* factors as nonexclusive). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *C.H.*, 89 S.W.3d at 27. In fact, evidence of only one factor may be sufficient for a factfinder to reasonably form a firm belief or conviction that termination is in a child's best interest—especially when undisputed evidence shows that the parental relationship endangered the child's safety. *See id*.

In addition to consideration of the *Holley* factors, courts remain mindful that "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best

interest." TEX. FAM. CODE ANN. § 263.307(a) (West Supp. 2016); *In re B.R.*, 456 S.W.3d 612, 615 (Tex. App.—San Antonio 2015, no pet.). There is also a strong presumption that keeping the child with a parent is in the child's best interests. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). In determining whether a parent is willing and able to provide the child with a safe environment, courts should consider the following statutory factors set out in section 263.307(b) of the Code, which include the following:

(1) the children's ages and physical and mental vulnerabilities;

(2) the frequency and nature of out-of-home placements;

(3) the magnitude, frequency, and circumstances of the harm to the children;

(4) whether the children have been the victim of repeated harm after the initial report and intervention by the department;

(5) whether the children are fearful of living in or returning to the home;

(6) the results of psychiatric, psychological, or developmental evaluations of the child, the children's parent, other family members, or others who have access to the home;

(7) whether there is a history of abusive or assaultive conduct by the children's family or others who have access to the home;

(8) whether there is a history of substance abuse by the children's family or others who have access to the home;

(9) whether the perpetrator of the harm to the children is identified;

(10) the willingness and ability of the children's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the children's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the children's family demonstrates adequate parenting skills; . . . and

(13) whether an adequate social support system consisting of an extended family and friends is available to the children.

TEX. FAM. CODE ANN. § 263.307(b); *see In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *4 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.) (citing *In re A.S.*, No. 04-14-

00505-CV, 2014 WL 5839256, at *2 (Tex. App.—San Antonio Nov. 12, 2014, pet. denied) (mem. op.)); *B.R.*, 456 S.W.3d at 616.

When determining the best interest of the child, a court "may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *B.R.*, 456 S.W.3d at 616 (citing *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied)). A factfinder may also measure a parent's future conduct by his or her past conduct to aid in determining whether termination of the parent-child relationship is in the best interest of the child. *Id.* Finally, the grounds on which the trial court granted termination, pursuant to section 161.001 of the Code, "may also be probative in determining the child's best interest; but the mere fact that an act or omission occurred in the past does not ipso facto prove that termination is currently in the child's best interest." *In re O.N.H.*, 401 S.W.3d 681, 684 (Tex. App.—San Antonio 2013, no pet.) (citation omitted).

Applying each standard of review, we examine the evidence pertaining to the best interest of A.J.M. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *E.N.C.*, 384 S.W.3d at 807; *J.F.C.*, 96 S.W.3d at 284. We remain mindful that the trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witnesses. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (requiring appellate deference to the factfinder's findings); *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

### a.    Ages, Vulnerabilities, and Desires of the Child

A.J.M. was only three-and-a-half-years-old at the time of trial. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (child's age and physical and mental vulnerabilities); *Holley*, 544 S.W.2d at 371–72. Although A.J.M. did not testify as to his desires, the trial court was entitled to consider testimony regarding A.J.M.'s current placement. A.J.M. was well cared for and bonded with his foster mother. She was his therapist prior to becoming a foster parent and had developed a strong

bond with the child. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

The trial court was also entitled to consider testimony concerning A.J.M.'s time spent with Dad, or lack thereof. *See J.D.*, 436 S.W.3d at 118; *U.P.*, 105 S.W.3d at 230. The record is silent regarding any relationship or bond between A.J.M. and Dad. Dad has been absent for most of A.J.M.'s life due to ongoing incarceration. *See* TEX. FAM. CODE ANN. § 263.307(b)(3) (magnitude, frequency, and circumstances of harm to child); *Holley*, 544 S.W.2d at 371–72. The record reflects Mom and Dad were living together sporadically at the time of the referral and emergency removal. When the Department tried to reach Dad to verify A.J.M.'s safety, he refused to cooperate and continued to evade all attempts by the Department to be located. Dad was arrested and incarcerated; and, thus, he was removed from A.J.M.'s life. There was no testimony that A.J.M. asks for Dad or feels a void due to Dad's absence. Dad's absence from A.J.M.'s life is a result of Dad's conduct and will likely inhibit his ability to bond with A.J.M. *See In re S.M.L.*, 171 S.W.3d 472, 478–79 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (indicating parent who was incarcerated at time of hearing and had past history of criminal conduct will likely face incarceration again); *see also* TEX. FAM. CODE ANN. § 263.307(b)(3); *Holley*, 544 S.W.2d at 371–72.

b. <u>Emotional and Physical Needs of the Child Now and in the Future, Emotional and Physical Danger to the Child Now and in the Future, and Willingness to Accept Services and Effect Positive Change</u>

Shortly after the Department became involved in A.J.M.'s life, Dad was arrested and charged with human trafficking. He has been incarcerated since that time. Prior to Dad's incarceration, there were numerous accounts of domestic violence against Mom and Mom's fear of Dad. The record shows Dad was unable to meet A.J.M.'s physical and emotional needs when his actions led to A.J.M.'s exposure to domestic violence and dangerous living conditions. *See*

TEX. FAM. CODE ANN. § 263.307(b)(3), (7) (history of abusive or assaultive conduct by child's family); *Holley*, 544 S.W.2d at 371–72. A parent's criminal background is particularly relevant if it demonstrates a tendency towards violence, especially violence against family members. *See D.N. v. Tex. Dep't of Family & Protective Servs.*, No. 03–15–00658–CV, 2016 WL 1407808, at *2 (Tex. App.—Austin Apr. 8, 2016, no pet.) (mem. op.) ("[D]omestic violence may constitute endangerment, even if the violence is not directed at the child.").

Although a parent's incarceration standing alone will not support an order of termination, it is an appropriate factor the trial court may consider when determining whether a parent engages in conduct that endangers a child's physical or emotional well-being. *See In re M.C.*, 482 S.W.3d 675, 685 (Tex. App.—Texarkana 2016, pet. denied) ("[W]hile we recognize that imprisonment, standing alone, is not conduct which endangers the physical or emotional well-being of the child, intentional criminal activity which expose[s] the parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of the child." (second alteration in original) (internal quotation marks omitted)); *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex. App.—El Paso 2015, no pet.) ("Evidence of criminal conduct, convictions, and imprisonment and its effect on a parent's life and ability to parent may establish an endangering course of conduct."). Texas courts have repeatedly recognized that a parent's tendency towards violence, especially against family members, is relevant to the trial court's best interest determination. *See D.N.*, 2016 WL 1407808, at *2; *In re A.A.*, No. 06–14–00060–CV, 2014 WL 5421027, at *3 (Tex. App.—Texarkana Oct. 23, 2014, no pet.) (mem. op.) ("Domestic violence, want of self-control, and the propensity for violence may be considered as evidence of endangerment."). Dad's criminal conduct is clearly evidence of his unwillingness to protect A.J.M. and to put A.J.M.'s needs above his own destructive life choices.

c.      Stability of the Home or Proposed Placement

"The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest." *J.D.*, 436 S.W.3d at 119–20. A child's need for permanence through the establishment of a stable, permanent home is recognized as the paramount consideration in a best-interest determination. *Id.* at 120. ("Stability and permanence are paramount in the upbringing of children."). Here, the record indicates that Dad is not due to be released until 2029, at which time, A.J.M. will be an adult. *See* TEX. FAM. CODE ANN. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72.

Although Dad requested the trial court place A.J.M. with his relatives, there were protective orders against his relatives, based on violence in the home and physical abuse of A.J.M.'s younger brother, and the caseworker had not yet found a suitable relative placement. *See* TEX. FAM. CODE ANN. § 263.307(b)(13) (whether adequate social system available); *Holley*, 544 S.W.2d at 371–72. On the other hand, A.J.M. was in a safe, nurturing environment in his foster home. *See In re M.A.N.M.*, 75 S.W.3d 73, 77 (Tex. App.—San Antonio 2002, no pet.) (reiterating "goal of establishing a stable, permanent home for a child is a compelling government interest").

The child's ad litem opined that this was the seventh placement for A.J.M. He is finally in a place where there is some permanency. The evidence clearly shows A.J.M.'s needs were being met by the foster family and the Department is optimistic the placement will lead to adoption.

## C.      Trial Court's Determination That Termination of Dad's Parental Rights Was in the Child's Best Interest

The trial court's conclusion regarding the termination of Dad's parental rights under sections 161.001(b)(1)(N) and (Q) are, in fact, probative in determining A.J.M.'s best interest. *See C.H.*, 89 S.W.3d at 28 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest); *O.N.H.*, 401 S.W.3d at 684.

In making its determination, the trial court must determine the child's best interest; above all, the court must consider the child's placement in a safe environment. *See* TEX. FAM. CODE ANN. § 263.307(a); *B.R.*, 456 S.W.3d at 615.

Reviewing the evidence under the two sufficiency standards, and giving due consideration to evidence that the trial court could have reasonably found to be clear and convincing, we conclude the trial court could have formed a firm belief or conviction that terminating Dad's parental rights to A.J.M. was in A.J.M.'s best interest. *See J.L.*, 163 S.W.3d at 85; *J.F.C.*, 96 S.W.3d at 266; *see also H.R.M.*, 209 S.W.3d at 108. Therefore, the evidence is legally and factually sufficient to support the trial court's order terminating Dad's parental rights. *See J.F.C.*, 96 S.W.3d at 266; *see also H.R.M.*, 209 S.W.3d at 108.

## CONCLUSION

The trial court found Dad committed two statutory grounds supporting termination of his parental rights, *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (Q), and that termination of his parental rights was in A.J.M.'s best interest, *see id.* § 161.001(b)(2).

Based on a review of the entire record, we conclude the evidence is legally and factually sufficient to support the trial court's finding, by clear and convincing evidence, that termination of Dad's parental rights to A.J.M. is in A.J.M.'s best interest. *See id.*

Accordingly, we overrule Dad's sole appellate issue regarding the trial court's termination of his parental rights.

Patricia O. Alvarez, Justice