

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-22-00015-CV

**IN THE INTEREST OF L.P.**, a Child

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-PA-00365
Honorable Susan D. Reed, Judge Presiding

**OPINION DISSENTING TO DENIAL OF EN BANC CONSIDERATION**

Dissenting Opinion by: Patricia O. Alvarez, Justice, joined by Luz Elena D. Chapa, Justice

Sitting en banc:     Rebeca C. Martinez, Chief Justice
                     Patricia O. Alvarez, Justice
                     Luz Elena D. Chapa, Justice
                     Irene Rios, Justice
                     Beth Watkins, Justice
                     Liza A. Rodriguez, Justice
                     Lori I. Valenzuela, Justice

Delivered and Filed: July 20, 2022

In this parental rights termination case, our previous decision in *Djeto* required that we reverse the trial court's finding on ground (D). *See Djeto v. Tex. Dep't of Protective & Regulatory Servs.*, 928 S.W.2d 96, 98 (Tex. App.—San Antonio 1996, no writ) (injecting a requirement for knowledge of paternity into subsection 161.001(b)(1)(D)). But because that portion of *Djeto* pertaining to ground (D) was wrongly decided, and a majority of this court has denied en banc consideration to correct *Djeto*, I respectfully dissent from the order denying en banc consideration.

## BACKGROUND

The facts of this case are not repeated here because they are not necessary to answer the crucial question: Should the part of *Djeto* that protects a father's parental rights—despite his knowing disregard for his child's safety—be overruled? *See id.* *Djeto* is the foundation case for this flawed view of subsection 161.001(b)(1)(D), and overruling *Djeto* would correct this court's earlier misstep and help safeguard the children the statute was designed to protect. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D).

## SECTION 161.001(B)(1)(D)

In conjunction with a best-interest-of-the-child finding, section 161.001 provides that a trial court may terminate a parent's rights to their child "if the court finds by clear and convincing evidence . . . that the parent has . . . knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." *Id.*

## KNOWLEDGE OF PATERNITY AS A PREREQUISITE FOR GROUND (D)

However, under *Djeto* and its progeny, "knowledge of paternity is a prerequisite to a showing of knowing placement of a child in an endangering environment." *In re M.J.M.L.*, 31 S.W.3d 347, 351 (Tex. App.—San Antonio 2000, pet. denied); *accord In re Stevenson*, 27 S.W.3d 195, 201 (Tex. App.—San Antonio 2000, no pet.); *see also In re N.N.M.*, No. 04-19-00369-CV, 2020 WL 4808704, at *4 (Tex. App.—San Antonio Aug. 19, 2020, no pet.) (mem. op.). This court should correct *Djeto*'s flawed view that ground (D) requires knowledge of paternity.

### *DJETO* IS NOT GOOD LAW

How does "knowledge of paternity" affect a ground (D) analysis? Under *Djeto*,[1] that means the trial court cannot consider evidence of a father's actions "prior to rendition of the order of paternity." *Djeto*, 928 S.W.2d at 98.

Respectfully, I think this part of *Djeto* addressing ground (D) is wrong. Without analyzing the statute, citing applicable authority, or otherwise explaining why, *Djeto* took the knowledge requirement for an enforceable obligation to support the child (ground (F)) and injected it into the knowledge requirement for knowingly endangering a child (ground (D)). *See id.*

As one reads *Djeto*, it seems the court was focused on "whether Djeto had a duty to act or refrain from acting in a particular manner," primarily with respect to when Djeto's duty to financially support the child arose. *See id.*; *see also* TEX. FAM. CODE ANN. 161.001(b)(1)(F).

*Djeto* correctly recited the principle that "[i]n order for an *enforceable obligation* to exist requiring the *support of an illegitimate child*, there must be a court order, a judicial admission, or an unequivocal acknowledgement of paternity." *Djeto*, 928 S.W.2d at 98 (emphasis added). It cites supporting authorities, its logic is straightforward, and it supports sound public policy.

But *Djeto* did not stop there; it extended the same knowledge requirement to ground (D)—an unrelated ground addressing a completely different concern. *Id.* In doing so, *Djeto* did not cite *Jimenez* in its ground (D) analysis, but it nevertheless seems to have relied on *Jimenez*—an El Paso case it relied on for its ground (F) analysis. *See Jimenez ex rel. Little v. Garza*, 787 S.W.2d 601, 603 (Tex. App.—El Paso 1990, no writ).

---

[1] *Djeto* is the foundation case cited in the *Texas Litigation Guide* for the proposition that "[w]hen termination of a father's parental rights is sought under Subsection (D), termination may be based only on conduct occurring after the father became aware of his paternity of the child." 23 William V. Dorsaneo III et al., *Texas Litigation Guide* § 381.02[3][a] (2020). *Djeto* has been cited by six of the fourteen courts of appeals.

But *Jimenez* had nothing to do with any knowledge requirement for termination under ground (D). *See id.* Simply put, *Jimenez* does not support *Djeto*'s injection of ground (F) knowledge requirements into ground (D). *See id.*

Further, *Djeto* does not examine the statute's plain language or otherwise perform *any* statutory construction to show how the statute's plain language prerequisite—that the parent have "knowingly placed or knowingly allowed" the child to be endangered—can be extended to require that a father must know with court-ordered certainty that he is the child's parent before he has any accountability for knowingly allowing a child to be endangered. *See Djeto*, 928 S.W.2d at 98.

And *Djeto*'s flaw has not gone unnoticed.

### CRITICIZING *DJETO*

Two later cases, in their dissents, have criticized *Djeto*'s reasoning on ground (D).

In *In re Stevenson*, the majority excluded evidence under (D) until the father "acquired that knowledge [of paternity] by resolving his doubts." *In re Stevenson*, 27 S.W.3d 195, 203 (Tex. App.—San Antonio 2000, no pet.). The dissent justifiably criticized that standard: "With *Djeto* and this opinion, we allow a father to avoid responsibility by merely saying he was not sure the child was his when termination is sought under section 161.001(1)(D) of the Texas Family Code." *Id.* (Rickhoff, J., dissenting). Other justices also questioned *Djeto*'s ground (D) analysis.

In *In re Interest of S.*, Justice Owen, joined by then-Justice Hecht, dissented to the denial of a petition for review. The dissent rehearsed the facts in *In re Stevenson*, which relied on *Djeto*'s ground (D) analysis, and then made this statement:

> Given the significance of the court of appeals' decision for [the child in the *Stevenson* case] and other children in circumstances similar to his, and *because the court of appeals' interpretation of section 161.001(1)(D) is debatable*, I would grant the Department's petition for review and decide this case on its merits.

*In re Interest of S.*, 52 S.W.3d 735, 737 (Tex. 2001) (Owen, J., dissenting) (emphasis added).

I agree with these dissents that *Djeto*'s ground (D) analysis is flawed. Its erroneous view produces at least two problems: (1) it creates a dubious "knowledge of paternity" test, and (2) until the father's paternity is formally adjudicated, it prevents a ground (D) analysis from considering any evidence that a father knowingly allowed a child to be endangered.

### CASES ADDRESSING KNOWLEDGE OF PATERNITY

The first of *Djeto*'s ground (D) analysis problems is its troubling test: Under the statute, what evidence is required to establish knowledge of paternity? The following cases address the evidence required to show knowledge of paternity.

*Djeto* requires "a court order, a judicial admission, or an unequivocal acknowledgement of paternity." *Djeto*, 928 S.W.2d at 98.

*In re Stevenson* requires a father "to have knowledge" that the child is his, and he can "acquire[] that knowledge by resolving his doubts" about his paternity. *In re Stevenson*, 27 S.W.3d at 202–03.

*In re M.J.M.L.* cites *Djeto* and *In re Stevenson* for the proposition that "knowledge of paternity is a prerequisite to a showing of knowing placement of a child in an endangering environment," but *In re M.J.M.L.* does not otherwise explain what constitutes knowledge of paternity. *In re M.J.M.L.*, 31 S.W.3d at 351.

*In re N.N.M.* cites *In re M.J.M.L.* and two cases that rely on *In re Stevenson*, but *In re N.N.M.* does not address what evidence constitutes knowledge of paternity. *In re N.N.M.*, 2020 WL 4808704, at *4.

Thus, the test is whether the father resolved his doubts about his paternity, and absent a judicial adjudication, the evidence will be the father's potentially self-serving testimony. As Justice Rickhoff noted, until there is a judicial adjudication of paternity, "we allow a father to

avoid responsibility by merely saying he was not sure the child was his when termination is sought under section 161.001[(b)](1)(D)." *In re Stevenson*, 27 S.W.3d at 203 (Rickhoff, J., dissenting).

*Djeto*'s knowledge of paternity test was created without any plain language analysis, statutory construction, or supporting authorities, and its application does not protect children.

### STATUTORY CONSTRUCTION

*Djeto*'s ground (D) analysis does not (1) examine the statute's plain language, (2) perform *any* statutory construction, or (3) cite *any* supporting authorities.  Its one-word justification for injecting ground (F) knowledge requirements into ground (D) is "Similarly."  It states: "Similarly, responsibility for [the child's] physical or mental well-being cannot be ascribed to [the father] prior to rendition of the order of paternity." *Djeto*, 928 S.W.2d at 98.

But section 161.001(b)(1)(D)'s plain language does not expressly require that the father know he is the child's parent.

> The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence . . . that the parent has . . . knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child.

TEX. FAM. CODE ANN. § 161.001(b)(1)(D).

Surely one "object sought to be attained" by the statute is the protection of children. *See* TEX. GOV'T CODE ANN. § 311.023 (allowing a court to consider the "object sought to be attained").

By its plain language, subsection 161.001(b)(1)(D)'s prerequisite to terminate a parent's rights is for the parent to knowingly place or knowingly allow the child to remain in dangerous conditions or surroundings; *the statute says nothing about the father knowing he is the parent*. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D).  Thus, if a person knowingly allows a child to be endangered, and the person turns out to be a parent, the statute's plain language makes that sufficient for statutory ground (D). *Id.*

## PUBLIC POLICY CONSIDERATIONS

The application of such a plain language, non-*Djeto* construction is good public policy. *See* TEX. GOV'T CODE ANN. § 311.023 (allowing a court to consider the "consequences of a particular construction").

For example, if a man has no idea he is the child's father, and he does not knowingly place the child in danger or knowingly allow the child to remain in danger, his parental rights are not at risk under (D).

If a man believes or suspects he could be the father, but he does not knowingly place the child in danger or knowingly allow the child to remain in danger, his parental rights are also not at risk under (D).

But, irrespective of a man's belief or knowledge of his paternity, if he knowingly places the child in danger or knowingly allows the child to remain in danger while he is awaiting formal adjudication of his paternity, his parental rights would be at risk under (D)—as they should be.

This plain language, non-*Djeto* construction may prompt the father to do something to protect the child in the interim. *Cf. In re Stevenson*, 27 S.W.3d at 203 (Rickhoff, J., dissenting).

On the other hand, the current *Djeto*-based construction—which allows a potential father who knows a child is being endangered, but who avoids gaining formal knowledge of paternity to escape review of his misconduct—undermines the legislature's object of protecting the child. *Contra* TEX. FAM. CODE ANN. § 161.001(b)(1)(D).

This court should not perpetuate *Djeto*'s misstep that disregards evidence of a father's misconduct in a ground (D) analysis until he admits paternity, gets court-ordered DNA test results confirming his paternity, or a court adjudicates him to be the father. *See* TEX. GOV'T CODE ANN. § 311.023 (allowing courts to consider a statute's "object sought to be attained" and the "consequences of a particular construction").

## CONCLUSION

The statute's plain language does not require or even suggest *Djeto*'s problematic construction. *Djeto*'s construction undermines the legislature's object to protect the child, and it could incentivize fathers to resist DNA testing and otherwise deny knowledge of paternity. These incentivized practices could delay permanency for the child or even allow a child to continue to be endangered while a father resists acquiring knowledge of paternity.

The crucial question is this: Should this court continue to apply *Djeto*'s flawed ground (D) view that (1) did not examine the statute's plain language, (2) did not perform any statutory construction, (3) failed to provide any supporting authorities, (4) other justices have criticized, and (5) immunizes fathers against consideration of any pre-knowledge-of-paternity evidence that they knowingly placed or knowingly allowed their child to be endangered? My answer is "No!"

Because a majority of the en banc court decides otherwise, I respectfully dissent to the order denying en banc consideration.


Patricia O. Alvarez, Justice